# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE HARVARD DRUG GROUP, LLC, on behalf of itself and all others similarly situated, | Civil Action No. 1:07-cv-00370-RWR |
| Plaintiffs, | |
| v. | |
| ASTRAZENECA PHARMACEUTICALS L.P., ASTRAZENECA L.P., ZENECA, INC., and ZENECA HOLDINGS, INC. | |
| Defendants. | |
| MEIJER, INC. and MEIJER DISTRIBUTION, INC., on behalf of themselves and all others similarly situated. | Civil Action No. 1:06-cv-02155-RWR |
| Plaintiffs, | |
| v. | |
| ASTRAZENECA PHARMACEUTICALS L.P., ASTRAZENECA L.P., ZENECA, INC., and ZENECA HOLDINGS, INC. | |
| Defendants. | |
| LOUISIANA WHOLESALE DRUG CO., INC., on behalf of themselves and all others similarly situated, | Civil Action No. 1:06-cv-02157-RWR |
| Plaintiffs, | |
| v. | |
| ASTRAZENECA PHARMACEUTICALS L.P., ASTRAZENECA L.P., ZENECA, INC., and ZENECA HOLDINGS, INC. | |
| Defendants. | |

BURLINGTON DRUG COMPANY, INC.,
DIK DRUG COMPANY, and KING
DRUG COMPANY OF FLORENCE,
INC., on behalf of themselves and all others
similarly situated,

                        Plaintiffs,

        v.

ASTRAZENECA PHARMACEUTICALS
L.P., ASTRAZENECA L.P., ZENECA, INC.,
and ZENECA HOLDINGS, INC.

                    Defendants.

Civil Action No. 1:07-cv-00041-RWR

## PLAINTIFF THE HARVARD DRUG GROUP, LLC'S CROSS MOTION FOR APPOINTMENT OF CO-LEAD COUNSEL AND FOR ENTRY OF PROPOSED CASE MANAGEMENT ORDER NO. 1

Plaintiff The Harvard Drug Group, LLC ("Harvard Drug"), by and through undersigned counsel, respectfully moves this Honorable Court for appointment as co-lead counsel the law firms of Cohen, Milstein, Hausfeld & Toll, P.L.L.C. ("CMHT") and Boies, Schiller & Flexner LLP ("BSF"), and for entry of the proposed case management Order No. 1, attached as Exhibit A to the supporting Memorandum.

Plaintiffs Louisiana Wholesale Drug Co., Inc. *et al.* (the "LWD Plaintiffs") have moved for entry of a proposed case management, which, among other things, consolidates all similar direct purchaser actions against defendant AstraZeneca Pharmaceuticals L.P. *et al.*, and appoints the firm of Garwin Gerstein & Fisher LLP as lead counsel.

Harvard Drug agrees with the LWD Plaintiffs that the direct purchaser class actions should be consolidated.  Harvard Drug, however, disagrees with respect to the

LWD Plaintiffs' proposed lead counsel in this action and with the need to designate

liaison counsel.  Instead, Harvard Drug moves that the firms CMHT and BSF be

appointed as co-lead counsel.  Such an appointment would be in the best interests of the

class and render the need for liaison counsel unnecessary.

Dated:  March 12, 2007

William A. Isaacson, D.C. Bar. No. 414788
Tanya S. Chutkan, D.C. Bar. No. 420478
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue NW, Suite 800
Washington, DC  20015
Tel:  (202) 237- 2727
Fax: (202) 237-6131

David Boies
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, NY  10504
Tel.: (914) 749-8200
Fax: (914) 749-8300

Richard B. Drubel
Kimberly Horton Schultz
BOIES, SCHILLER & FLEXNER LLP
26 South Main Street
Hanover, NH  03755
Tel: (212) 838-7797
Fax: (603) 643-9010

Respectfully submitted,

Michael D. Hausfeld, D.C. Bar No. 153742
Daniel A. Small, D.C. Bar No. 465094
Brian A. Ratner, D.C. Bar No. 473284
COHEN, MILSTEIN, HAUSFELD
   & TOLL, P.L.L.C.
1100 New York Avenue, NW, Suite 500
Washington, DC  20005
Tel: (202) 408-4600
Fax: (202) 408-4699

Steig D. Olson
COHEN, MILSTEIN, HAUSFELD
   & TOLL, P.L.L.C.
150 East 52nd Street, 30th Floor
New York, NY  10022
Tel: (212) 838-7797
Fax: (212) 838-7745

Arthur N. Bailey, Esq.
ARTHUR N. BAILEY & ASSOCIATES
111 West Second Street
Jamestown, NY  14701
Tel:  (716) 664-2967
Fax:  (716) 664-2983

**Attorneys for Plaintiff**
**The Harvard Drug Group, LLC**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE HARVARD DRUG GROUP, LLC, on behalf of itself and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> ASTRAZENECA PHARMACEUTICALS L.P., ASTRAZENECA L.P., ZENECA, INC., and ZENECA HOLDINGS, INC. <br><br> Defendants. | Civil Action No. 1:07-cv-00370-RWR |
| MEIJER, INC. and MEIJER DISTRIBUTION, INC., on behalf of themselves and all others similarly situated. <br><br> Plaintiffs, <br><br> v. <br><br> ASTRAZENECA PHARMACEUTICALS L.P., ASTRAZENECA L.P., ZENECA, INC., and ZENECA HOLDINGS, INC. <br><br> Defendants. | Civil Action No. 1:06-cv-02155-RWR |
| LOUISIANA WHOLESALE DRUG CO., INC., on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> ASTRAZENECA PHARMACEUTICALS L.P., ASTRAZENECA L.P., ZENECA, INC., and ZENECA HOLDINGS, INC. <br><br> Defendants. | Civil Action No. 1:06-cv-02157-RWR |

BURLINGTON DRUG COMPANY, INC.,
DIK DRUG COMPANY, and KING DRUG
COMPANY OF FLORENCE, INC., on behalf
of themselves and all others similarly situated,

                      Plaintiffs,

    v.

ASTRAZENECA PHARMACEUTICALS
L.P., ASTRAZENECA L.P., ZENECA, INC.,
and ZENECA HOLDINGS, INC.

                      Defendants.

Civil Action No. 1:07-cv-00041-RWR

---

**PLAINTIFF THE HARVARD DRUG GROUP, LLC'S RESPONSE TO THE
LWD PLAINTIFFS' MOTION FOR ENTRY OF PROPOSED CASE MANAGEMENT
ORDER NO. 1 AND MEMORANDUM IN SUPPORT OF ITS CROSS MOTION
FOR APPOINTMENT OF CO-LEAD COUNSEL AND FOR
ENTRY OF PROPOSED CASE MANAGEMENT ORDER NO. 1**

       Plaintiff The Harvard Drug Group, LLC ("Harvard Drug"), by undersigned counsel,

respectfully submits this Response to the LWD Plaintiffs' motion, and supplemental motion, for

entry of proposed case management order No. 1 ("LWD Motion").[1] Plaintiff Harvard Drug

agrees with the LWD Plaintiffs that the direct purchaser class actions should be consolidated.

Plaintiff Harvard Drug, however, disagrees with respect to the LWD Plaintiffs' proposed lead

counsel in this action, Garwin Gerstein & Fisher ("GGF"), and with the need to designate liaison

counsel. Plaintiff Harvard Drug respectfully moves for appointment as co-lead counsel the law

firms of Cohen, Milstein, Hausfeld & Toll, P.L.L.C. ("CMHT") and Boies, Schiller & Flexner

---

[1]     The LWD Plaintiffs submitted a Motion for Entry of Proposed Case Management Order
No. 1 on January 31, 2007 (Docket No. 13, 06-cv-2157) and a supplemental motion with a new proposed
order on February 27, 2007 (Docket No. 16, 06-cv-2157). This response, and cross-motion, addresses
both.

LLP ("BSF").  A proposed case management Order for consolidation and appointment of these co-lead counsel is submitted herewith as Exhibit A.

## PRELIMINARY STATEMENT

Plaintiff Harvard Drug respectfully submits that appointment of undersigned counsel as co-lead counsel in this action would be in the best interests of the proposed class.  Undersigned counsel are members of two large and leading plaintiff antitrust law firms, both with offices in the District of Columbia, and have been lead counsel or co-lead counsel in numerous major antitrust and pharmaceutical antitrust class actions.  Undersigned counsel have achieved settlements praised by courts in written opinions as records in the antitrust field.  Undersigned counsel are the only two firms proposed as lead counsel to take to trial – and win – major antitrust class actions in the last four years, including one case in this Court.  Undersigned counsel's presence, and experience, in the District of Columbia obviates the need for the Court to designate liaison counsel, which will lead to an efficient prosecution of this case.  Additionally, undersigned counsel have performed an independent investigation and retained the leading expert economist who has worked in all of the leading pharmaceutical antitrust cases.

Finally, Harvard Drug, which supports appointment of undersigned proposed co-lead counsel, is a large class member, a leading distributor, and a top eight national drug wholesaler, and will work with and monitor the work of the undersigned counsel in what is likely to be a complex and hard-fought case.

## BACKGROUND

Several antitrust actions have been filed in this Court, and have been related before this Court, challenging Defendants' alleged anticompetitive scheme to thwart generic competition in order to preserve and extend their monopoly power in the market for prescription omeprazole and esomeprazole drugs, sold by Defendants under the brand names Prilosec and Nexium.

(These drugs are taken to prevent heartburn and to heal damage to the esophagus that can result from acid reflux.)

The first such action filed was a direct purchaser *non*-class case, <u>Walgreen Co. et al. v. AstraZeneca Pharmaceuticals L.P. et al.</u>, No. 06-cv-2084-RWR. Another direct purchaser non-class case (<u>Rite Aid Corporation et al. v. AstraZeneca Pharmaceuticals L.P. et al.</u>, No. 06-cv-2089-RWR) was later filed. CMHT filed the first direct purchaser *class* action, on behalf of Meijer, Inc. and Meijer Distribution, Inc. ("Meijer"). The "LWD Plaintiffs"[2] subsequently filed two class actions. <u>Louisiana Wholesale Drug Co., Inc.</u>, No. 06-cv-2157-RWR; <u>Burlington Drug Company, Inc. et al.</u>, No. 07-cv-00041-RWR.

On February 16, 2007, CMHT and BSF filed a direct purchaser class action on behalf of plaintiff Harvard Drug.[3] <u>See</u> Docket No. 1, Case No. 07-cv-00370-RWR. The direct purchaser plaintiffs agreed with Defendants on a schedule for the filing of amended complaints, including a consolidated amended complaint for all the direct purchaser class cases, and on a briefing schedule on a forthcoming motion to dismiss. <u>See</u> Stipulation, Docket No. 14, Case No. 06-cv-2155. Pursuant to that stipulation, all plaintiffs (including Harvard Drug) filed amended complaints on February 28, 2007. <u>See</u> Harvard Drug Amended Class Action Complaint, Docket No. 4, Case No. 07-cv-00370-RWR. The amended complaints filed in the class actions are essentially the same (except for the individual plaintiffs' information). Because the Court has not yet consolidated the direct purchaser class actions, however, plaintiffs filed separate amended complaints in each action instead of filing one consolidated complaint in a master docket.

---

[2]    The "LWD Plaintiffs" are Louisiana Wholesale Drug Co., Inc., Burlington Drug Company, Inc., Dik Drug Company, and King Drug Company.

[3]    As explained in the Motion for Extension of Time filed by Meijer on February 15, 2007 (Document # 15, Case No. 1:06-cv-02155), Linda P. Nussbaum will continue the representation of Meijer at her new firm Kaplan, Fox & Kilsheimer LLP.

Although the class plaintiffs have worked together collegially, all counsel recognize the need for appointment of lead counsel to manage the case's prosecution on behalf of the proposed class. The LWD Plaintiffs have proposed that GGF be appointed sole lead counsel for the class.[4] By the present filing, plaintiff Harvard Drug proposes that CMHT and BSF be appointed co-lead counsel for the class.[5]

## ARGUMENT

Under the Federal Rules of Civil Procedure and the Manual for Complex Litigation, the Court has the authority to consolidate the direct purchaser class cases and to "designate interim counsel to act on behalf of the putative class" before ruling on class certification. Fed. R. Civ. P. 23(g)(2)(A). All plaintiffs' counsel agree that both steps are warranted here to accomplish the efficient and effective prosecution of this case on behalf of the class. When more than one applicant seeks appointment as class counsel, as here, "the court must appoint the applicant best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2)(B).

Federal Rule of Civil Procedure 23 sets forth factors for courts to consider in appointing class counsel:

> **(B)** An attorney appointed to serve as class counsel must fairly and adequately represent the interests of the class.
> **(C)** In appointing class counsel, the court
>     (i) must consider:
> - the work counsel has done in identifying or investigating potential claims in the action,
> - counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action,
> - counsel's knowledge of the applicable law, and
> - the resources counsel will commit to representing the class;

---

[4]      In its supplemental filing (Docket No. 16, Case No. 06-cv-2157), GGF has changed its proposed designation from "lead counsel" to "Chairman of the Executive Committee." However, as explained in the supplemental filing, this is a change of nomenclature only. See id. at n.1.

[5]      As co-lead counsel, CMHT and BSF would propose to work with an Executive Committee of plaintiffs' counsel made up of one member firm from each of the filed direct purchaser class actions.

> (ii)  may consider any other matter pertinent to counsel's ability to
> fairly and adequately represent the in interests of the class;
> (iii) may direct potential class counsel to provide information on any
> subject pertinent to the appointment and to propose terms for attorney
> fees and nontaxable costs; and
> (iv)  may make further orders in connection with the appointment.

Fed. R. Civ. P. 23(g)(1)(B),(C).

The Manual for Complex Litigation sets forth the scope of the court's inquiry in

appointing class counsel:[6]

> In every case, the judge must inquire into the work counsel has done in
> investigating and identifying the particular case; counsel's experience in handling
> class actions, other complex litigation, and claims of the type asserted in the
> action; counsel's knowledge of the applicable law; the resources counsel will
> commit to representing the class; and any other factors that bear on the attorney's
> ability to represent the class fairly and adequately.
>
> * * * * *
>
> If there are multiple applicants, the court's task is to select the applicant best able
> to represent the interests of the class.  No single factor is dispositive in evaluating
> prospective class counsel.

Manual for Complex Litigation, Fourth, at §21.271 (the "Manual").

Under the factors enunciated in Rule 23(g) and the Manual, CMHT and BSF are best able

to represent the interests of the class and thus should be appointed co-lead counsel.

---

[6]    The Manual for Complex Litigation summarizes the responsibilities of lead counsel as
follows:

> [Lead counsel are] [c]harged with formulating (in consultation with other
> counsel) and presenting positions on substantive and procedural issues during the
> litigation. Typically they act for the group – either personally or by coordinating the
> efforts of others – in presenting written and oral arguments and suggestions to the court,
> working with opposing counsel in developing and implementing a litigation plan,
> initiating and organizing discovery requests and responses, conducting the principal
> examination of deponents, employing experts, arranging for support services, and seeing
> that schedules are met.

Manual for Complex Litigation, Fourth at §10.221 (2004).  Factors courts consider important in
determining adequate counsel for such a role include experience and the attorneys' resources,
commitment, and qualifications to accomplish the assigned tasks.  See id. at §10.224.

CMHT and BSF, by any objective measure, have significantly more experience than GGF in investigating, managing, and trying complex class action cases, including in this jurisdiction. Both CMHT and BSF have offices in the District of Columbia and have recently prevailed together in a major antitrust trial in this Court before Chief Judge Hogan. Proposed co-lead counsel have greater resources at their disposal. Moreover, CMHT and BSF have conducted independent investigations and have retained the leading expert witness in pharmaceutical antitrust litigations. In addition, undersigned counsel's client, Harvard Drug, is a significant direct purchaser; indeed, Harvard Drug is one of the top eight drug wholesalers in the nation, and thus a principal victim of the alleged anticompetitive acts.

**A.    Proposed Co-Lead Counsel Have Superior Experience in the Management and Prosecution of Complex Antitrust Class Action Litigation.**

As reflected in the attached résumés (Exhibits B & C hereto), CMHT and BSF have superior experience in the prosecution of class action and complex antitrust litigation. Both firms also have a demonstrated ability to prepare and try complex cases to verdict, a significant factor weighing in favor of their appointment as lead counsel for these antitrust class cases. This factor is significant because AstraZeneca can be expected to fight fiercely against the claims in this case and to protect its Nexium franchise – which saw over $3.5 billion in U.S. sales in 2006.

CMHT and BSF bring greater resources and superior experience nationwide and in Washington, D.C. compared to GGF. CMHT has more than 60 attorneys, with offices in Washington, D.C., New York, Philadelphia, and Chicago, and soon will be opening an office in London. BSF has approximately 240 attorneys, with offices in Washington D.C., New York, New Jersey, Florida, California, Nevada, and New Hampshire. CMHT and BSF's presence in the District of Columbia will eliminate the need to designate a liaison counsel firm for this case (proposed by GGF) and, thus, eliminate inefficiencies and duplicative efforts. Communication

between the Court and lead counsel for the class will not require an intermediary, and undersigned counsel could be at the Court on a moment's notice.

GGF is a fine firm and often works together with undersigned counsel. However, GGF does not have the depth and breadth of experience that CMHT and BSF will bring to this litigation. GGF is also relatively small by comparison to CMHT and BSF. GGF has one office in New York with 14 attorneys – eight partners and six associates. Exhibit H to LWD Motion. At that size, GGF notes that it is currently serving in a leadership role in at least eight large class cases – *i.e.*, one for each of its partners. Id. at 10-11. This raises some question about GGF's ability to give this large, complex case the attention it warrants.

Both CMHT and BSF have served as lead counsel or co-lead counsel in numerous important antitrust cases in a wide range of fields, and particularly in the sub-specialty of pharmaceutical antitrust matters such as this, where they have served as a sole or co-lead counsel in the vast majority of cases that have been successfully resolved to date.

## 1.    Experience as Lead Trial Counsel in Antitrust Class Actions

Undersigned counsel have significantly more trial experience in antitrust matters than GGF. Notably, in the last four years, undersigned counsel have acted as trial counsel in the leading examples of only a handful of recorded class action antitrust cases in the past decade prosecuted through a jury trial. While it is true that most large antitrust cases settle before trial, it is also true that the ability to try such a case gives lead counsel increased sophistication in shaping cases for trial and additional leverage in settlement negotiations, both of which benefit the class.

In In re Vitamins Antitrust Litigation, after a then-record billion dollar settlement, undersigned counsel Michael Hausfeld and Brian Ratner of CMHT and David Boies, William Isaacson, and Tanya Chutkan of BSF, acting as trial counsel, won a jury verdict in 2003 against

four non-settling defendants before Chief Judge Hogan in this District of $49.5 million (10%

more than was requested from the jury) which was then trebled to $148.5 million.

In remarks to the jury pool, Chief Judge Hogan stated the following:

"[T]his is a very challenging and interesting case involving what we call antitrust
issues between the parties. That's anticompetitive-type business issues involving,
I think, some of the finest business litigating lawyers or litigation-type lawyers in
the country that are before you that you will have the privilege to listen to."  May
28, 2003 Trial Tr. at 25:1-6.

In In re Scrap Metal Antitrust Litigation, undersigned counsel William Isaacson and

Tanya Chutkan, as lead counsel, won a jury verdict in federal district court in Ohio in 2006 for,

after trebling and judgment reduction, $23 million.  In October, the district court denied the

defendants' post-trial motions and, among other things, held that cross examination by lead

counsel had demonstrated "conduct tantamount to suborning perjury by a key witness."  In re

Scrap Metal Antitrust Litigation, 2006 U.S. Dist. LEXIS 75873 (N.D. Ohio. 2006).[7]

In Nate Pease, et al. v. Jasper Wyman & Son, Inc., et al., Civil Action No. 00-015 (Knox

County Superior Court, Maine), undersigned counsel Daniel Small of CMHT, as lead counsel,

won a jury verdict in Maine state court in 2003 against three blueberry processing companies for

their participation in a four-year price-fixing and non-solicitation conspiracy that artificially

lowered the prices defendants paid to approximately 800 growers for wild blueberries.  The jury

ordered defendants to pay $18.68 million in damages – $56 million after trebling.

It should also be noted that Michael Hausfeld, Daniel Small, and Brian Ratner of CMHT

and William Isaacson and Tanya Chutkan from BSF are all based in Washington, D.C.  Both

CMHT and BSF have substantial experience in D.C. District court and will be able to handle any

court appearances on very short notice.

---

[7]       In In re Terra-Drill Partnerships, undersigned counsel, Richard Drubel successfully tried
a securities class action case to a jury and won a $72 million verdict, which was called one of the most
significant verdicts of the year by the National Law Journal.

2.    **Significant Antitrust Settlements**

The following are excerpts from recent Court opinions regarding settlements obtained by

the work of either or both of the firms of CMHT and BSF in which the undersigned counsel

acted as lead counsel or co-lead counsel:

A $512 million settlement in In re Auction Houses:

Indeed, there could be no greater testament to the process than some of the comments made at the settlement hearing by two of the interim lead counsel who were ousted as a result of the Court's decision to hold an auction to select lead counsel. Mr. Furth, on behalf of all of the interim lead counsel, said that he "never in [his] fondest dreams…believed that these defendants would pay $512 million" and that this settlement "is *the most outstanding result I have ever heard of in the history of the antitrust laws*."

In re Auction Houses Antitrust Litig., 2001 U.S. Dist. LEXIS 1713 at *27-28 (S.D.N.Y. 2001)

(emphasis added).

A $1.1 billion settlement in In re Vitamins Antitrust Litigation:

The Settlement is *unprecedented* for many reasons: the percentage rate on which the Agreement is predicated is in *the highest tier of settlements* for price-fixing class actions; *the total dollar value to the class is the largest settlement of a price-fixing class action*; the Settlement is a totally cash settlement and calls for immediate payment by defendants; the Agreement was reached at a relatively early stage in the litigation; the class purchases from non-settling defendants remain in the case as to the non-settling defendants; the release of claims does not cover foreign sales of vitamins or indirect purchaser claims; the Settlement contains a provision for three-year injunctive relief barring future collusive behavior by these defendants; the Agreement contains a most-favored-nations clause ("MFN clause") with a two-year duration; and the Settlement provides for a separate fund for attorneys' fees.

In re Vitamins Antitrust Litig., 2000 U.S. Dist. LEXIS 8931 at *20-21 (D.D.C. 2000) (TFH)

(emphasis added).

A $24 million settlement in In re FirstDatabank Antitrust Litigation:

The terms of the Direct Purchaser Settlement Agreement are very favorable for the members of the Direct Purchaser Settlement Class. . . . Plaintiffs' expert economist, Dr. Sattinger opines that the proposed settlement not only falls within the range of five standard damages calculation methodologies, but promises *a*

*substantial premium to the class over estimated single damages under three of the five models.* This Court has previously recognized the appropriateness of approving class settlements involving recoveries for far less than the whole of estimated single damages suffered.

In Re First Databank Antitrust Litig., 205 F.R.D. 408, 411(D.D.C. 2002) (TPJ) (emphasis added).

GGF in its memorandum offers judicial opinions praising two settlements in which it acted as co-lead counsel: In re Buspirone Antitrust Litigation and In re Cardizem Antitrust Litigation. Notably, in each case, GGF was co-lead counsel with BSF.

### 3.    Pharmaceutical Antitrust Cases

BSF has been co-lead counsel in leading pharmaceutical antitrust cases, including:

> In re Cardizem Antitrust Litigation, (E.D. Mich.): BSF served as co-lead counsel on behalf of direct purchasers of the drug Cardizem; the case settled for $110 million.

> In re Buspirone Antitrust Litigation, (S.D.N.Y.): BSF served as co-lead counsel on behalf of direct purchasers of the drug Buspirone; the case settled for $220 million.

> In re Terazosin Hydrochloride Antitrust Litigation, (S.D. Fla.): BSF served as co-lead counsel on behalf of direct purchasers of the drug Terazosin Hydrochloride; the case settled for $75 million.

> In re Oxycontin Antitrust Litigation, (S.D.N.Y.): BSF serves as co-lead counsel on behalf of direct purchasers of Oxycontin drugs.

> Meijer, Inc. v. Warner Chilcott (D.D.C.) (CKK): BSF serves on the lead executive committee on behalf of direct purchasers of the drug Ovcon.

CMHT has been sole or co-lead counsel in leading pharmaceutical antitrust cases, including:

> Oncology & Radiation Associates, P.A. v. Bristol Myers Squibb Co., et al., (D.D.C.) (EGS): CMHT served as sole lead counsel on behalf of direct purchasers of the drug Taxol; the case settled for over $65 million.

North Shore Hematology-Oncology Associates, P.C. v. Bristol-Meyers Squibb Co., (D.D.C.) (EGS): CMHT served as sole lead counsel on behalf of direct purchasers of the drug Platinol; the case settled for $50 million.

In re Children's Ibuprofen Oral Suspension Antitrust Litigation, (D.D.C.) (ESH): CMHT serves as sole lead counsel on behalf of direct purchasers of Generic Children's Ibuprofen; the case settled for $9.7 million.

In re Relafen Antitrust Litigation, (D. Mass.). CMHT served as co-lead counsel on behalf of direct purchasers of the drug Relafen; the case settled for $175 million.

In re Remeron Antitrust Litigation, (D.N.J). CMHT served as co-lead counsel on behalf of direct purchasers of the drug Remeron; the case settled for $75 million.

In re Lorazepam & Clorazepate Antitrust Litigation, (D.D.C.) (TFH). CMHT served as co-lead counsel on behalf of direct purchasers of the drugs lorazepam and clorazepate; the case settled for $35 million.

Meijer, Inc. v. Warner Chilcott (D.D.C.) (CKK). CMHT serves on the lead executive committee on behalf of direct purchasers of the drug Ovcon.[8]

**B.    Proposed Co-Lead Counsel Have Performed an Independent Investigation and Consulted with and Retained the Leading Expert in Pharmaceutical Class Actions.**

CMHT and BSF have performed an independent investigation of this matter. For example, as part of its work in drafting the complaint and investigating this matter, undersigned counsel has retained as a consulting expert Dr. Jeffrey Leitzinger of the firm of Econ One. As reflected in the resume of Dr. Leitzinger, attached as Exhibit D hereto, he has worked as an expert in numerous significant pharmaceutical antitrust cases. These cases include the leading pharmaceutical antitrust cases in which favorable settlements were achieved and which have been cited by undersigned counsel and GGF. Undersigned counsel also have unique trial experience with Dr. Leitzinger. Last year, as lead counsel, undersigned counsel with BSF called at trial and defended Dr. Leitzinger as its expert in In re Scrap Metal Antitrust Litigation.

---

[8]    CMHT acknowledges that important work on these cases was done in part by Linda Nussbaum whose new firm has filed a pleading indicating that she is joining Kaplan, Fox & Kilsheimer and intends to act as counsel in this action.

In Meijer, Inc. v. Warner Chilcott Holdings Company, in July 2006, undersigned counsel together with GGF (acting together on an executive committee) filed a motion for class certification with the supporting testimony of Dr. Leitzinger.  Counsel acting together there stated with regard to Dr. Leitzinger as follows:

> Plaintiffs have submitted an expert declaration by a noted economist, Jeffrey J. Leitzinger, Ph.D., who has extensive experience analyzing economic impact and damages in antitrust drug cases generally and *specifically* in the delayed generic entry antitrust cases discussed above [*Relafen, Cardizem, Buspirone, and Lorazepam*] (among other similar pending actions) in which district courts have certified classes of direct purchasers of brand-name prescription drugs.

Excerpts of memorandum in support of class certification, dated July 16, 2006, attached as Exhibit E hereto at 4.   That motion for class certification also included a declaration from Dr. Leitzinger which summarized his experience in this field, including In re Cardizem Antitrust Litigation, In re Buspirone Antitrust Litigation, In re Relafen Antitrust Litigation, and In Re Remeron Antitrust Litigation. Excerpts of Declaration, attached as Exhibit F hereto at 1-4.

As a result, although other experts have worked in the field, undersigned counsel uniquely have access to and will work with the leading expert who has provided litigation support in class action pharmaceutical cases.  The results of this and other elements of the independent investigation conducted by proposed co-lead counsel are evident in the initial complaint filed by plaintiff Harvard Drug in this matter, which is the only class complaint filed by a direct purchaser which contains substantive allegations not found in the first complaint filed by Walgreen Co. against Defendants.[9]

---

[9]      See, e.g., Harvard Drug Complaint (Docket No. 1, 07-cv-00370) at ¶¶ 66-85.  In its original memorandum, GGF asserts that it "performed an extensive investigation into the claims at issue." Docket No. 13, Exh. 1, Docket No. 6-cv-2157, at 6, n.5.  However, the initial complaints GGF filed on behalf of the LWD Plaintiffs do not differ substantively from the first filed Walgreen complaint.

### C.    Proposed Co-Lead Counsel Represent the Most Substantial Plaintiff.

In its original memorandum, GGF argued that it should be appointed sole lead counsel because it represents class members with "the most significant financial stake in the litigation (*vis-a-vis* the other named plaintiff, Meijer, Inc.)." Docket No. 13, Exh. 1, Docket No. 6-cv-2157, at p.9. GGF has also submitted form affidavits using identical language on behalf of several class members, who support GGF as lead counsel. (These form affidavits using identical language have also been submitted by GGF in other cases. Exhibit G hereto (affidavits of Scherr, Moran, Schuss, and McQueary).)

The Federal Rules of Civil Procedure, cases in this Circuit, and the Manual for Complex Litigation do not reference the size of the plaintiff as a meaningful criterion in the selection of lead counsel in antitrust cases. In support of its argument, GGF instead relies on a decision in In re Scrap Metal Antitrust Litigation (N.D. Ohio 2002), attached as Exhibit K to LWD Motion. (Ironically, the Court in In re Scrap Metal Antitrust Litigation appointed BSF as lead counsel, noting that, "It is also true that, while all counsel are certainly well qualified, the Boies, Schiller, firm seems to have an edge in terms of experience in the antitrust arena.").

It is worth noting that neither the LWD Plaintiffs, nor the entities filing affidavits for GGF, have been shown to have a particularly "significant stake" in the litigation. Several of the affiants appear to be members of a single *regional* wholesaler group, Optisource.[10] Moreover, it does not appear that any of the LWD Plaintiffs' are *national* wholesalers of any significant size. Louisiana Wholesale Drug Co., Inc., for example, describes itself as having "an area of operation

---

[10]    *See, e.g.,* the websites of Dakota Drug Inc. (www.dakdrug.com); Drogueria Betances, Inc. www.drogueriabetances.com/frame_eng1.htm); McQueary Bros. Wholesale Drug Co. (www.mcqbros.com/business.htm).

[*sic*: that] covers *the entire state of Louisiana* with a customer base that includes sixty-five percent of the independent pharmacists."[11]

Thus, assuming that the <u>Scrap Metal</u> approach should be considered here, Harvard Drug is the appropriate plaintiff to recommend lead counsel. Harvard Drug is a $400 million a year company and a major *national* wholesaler. Affidavit of Samir Shah, attached as Exhibit H hereto. Harvard Drug supplies generic and branded pharmaceuticals to over 6,000 retail customers nationwide.[12] <u>Id</u>. As a wholesaler, Harvard Drug ships to thousands of customers via next day service, six days a week, and is one of the *top eight* largest wholesale distributors of pharmaceutical drugs in the United States. <u>Id</u>. Harvard Drug has also stated its intention to monitor the litigation and work with lead counsel in this action. <u>Id</u>. GGF has made no showing that its clients match the size and sophistication of Harvard Drug or its stake in the litigation.

## CONCLUSION

Undersigned counsel respectfully request entry of the proposed Case Management Order No. 1, submitted herewith as Exhibit A, consolidating the direct purchaser class actions and designating CMHT and BSF as co-lead counsel for the proposed class.

---

[11]    See www.pharmacychoice.com/marketplace/drug_wholesalers.cfm (emphasis added).
[12]    The largest customer count noted in the affidavits of GGF is Smith Drug company with 1300 retailer customers; most of the affidavits do not describe the size of the class member making the affidavit.

Dated:  March 12, 2007

Respectfully submitted,

By _____

William A. Isaacson, D.C. Bar. No. 414788
Tanya S. Chutkan, D.C. Bar No. 420478
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue NW, Suite 800
Washington, DC  20015
Tel:  (202) 237- 2727
Fax: (202) 237-6131

David Boies
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, New York  10504
Tel.: (914) 749-8200
Fax: (914) 749-8300

Richard B. Drubel
Kimberly Horton Schultz
BOIES, SCHILLER & FLEXNER LLP
26 South Main Street
Hanover, NH  03755
Tel: (212) 838-7797
Fax: (603) 643-9010

Michael D. Hausfeld, D.C. Bar No. 153742
Daniel A. Small, D.C. Bar No. 465094
Brian A. Ratner, D.C. Bar No. 473284
COHEN, MILSTEIN, HAUSFELD
  & TOLL, P.L.L.C.
1100 New York Avenue, NW, Suite 500
Washington, DC  20005
Tel: (202) 408-4600
Fax: (202) 408-4699

Steig D. Olson
COHEN, MILSTEIN, HAUSFELD
  & TOLL, P.L.L.C.
150 East 52nd Street, 30th Floor
New York, NY  10022
Tel: (603) 643-9090
Fax: (212) 838-7745

Arthur N. Bailey, Esq.
ARTHUR N. BAILEY & ASSOCIATES
111 West Second Street
Jamestown, New York  14701
Tel:  (716) 664-2967
Fax:  (716) 664-2983

**Attorneys for Plaintiff
The Harvard Drug Group, LLC**

## CERTIFICATE OF SERVICE

I, Brian A. Ratner, hereby certify that on this 12th day of March, 2007, I served true and correct copies of Plaintiff The Harvard Drug Group, LLC's Response to the LWD Plaintiffs' Motion for Entry of Proposed Case Management Order No. 1 and Cross Motion for Appointment of Co-Lead Counsel and Entry of Proposed Case Management Order No. 1 by overnight mail and electronic mail to the following counsel of record:

David U. Fierst
STEIN, MITCHELL & MEZINES, LLP
1100 Connecticut Avenue, NW
Suite 1100
Washington, DC 20036-4195
Tel:  (202) 737-7777
Fax:  (202) 296-8312

Daniel Berger
David F. Sorenson
Eric L. Cramer
BERGER & MONTAGUE, P.C.
1622 Locus Street
Philadelphia, PA 19103
Tel: (800) 424-6690
Fax: (215) 875-4604

Bruce E. Gerstein
Barry S. Taus
Brett Cebulash
Kevin Landau
GARWIN GERSTEIN & FISHER LLP
1501 Broadway, Suite 1416
New York, New York 10036
Tel:  (212) 398-0055
Fax: (212) 764-6620

John Gregory Odom
Stuart E. Des Roches
ODOM & DES ROCHES, L.L.P.
650 Poydras Street
Suite 2020, Poydras Center
New Orleans, LA 70130
Tel: (504) 522-0077
Fax: (504) 522-0078

Brent B. Barrier
PHELPS DUNBAR, LLP
365 Canal Street, Suite 2000
New Orleans, LA 70130
Tel:  (504) 566-1311
Fax: (504) 568-9130

Adam Moskowitz
KOZYAK TROPIN & THROCKMORTON
2525 Ponce de Leon Blvd., 9th Floor
Miami, FL 33134
Tel:  (305) 372-1800
Fax: (305) 372-3508

**Counsel for the LWD Plaintiffs**

Linda P. Nussbaum
KAPLAN FOX & KILSHEIMER LLP
805 Third Avenue, 22nd Floor
New York, New York 10022
Tel:  (212) 687-1980
Fax:  (212) 687-7714

Joseph M. Vanek
David Germaine
VANEK, VICKERS & MASINI, P.C.
225 W. Washington St., 18th Floor
Chicago, IL 60606
Tel:  (312) 224-1500
Fax:  (312) 224-1510

Paul E. Slater
SPERLING & SLATER, P.C.
55 West Monroe Street
Suite 3300
Chicago, IL 60603
Tel:  (312) 641-3200
Fax: (312) 641-6492

**Counsel for Meijer**

Kristin Graham Koehler
SIDLEY AUSTIN, LLP
1501 K Street, N.W.
Suite 800
Washington, DC 20005-1401
Tel: (202) 736-8359
Fax: (202) 736-8711

Mark Edmonde Haddad
SIDLEY AUSTIN, LLP
555 West Fifth Street
Suite 4000
Los Angeles, CA 90013
Tel: (213) 853-2937
Fax: (213) 896-6600

John Treece
SIDLEY AUSTIN, LLP
One South Dearborn
Chicago, IL 60603
Tel: (312) 853-2937
Fax: (312) 853-7036

**Counsel for Defendants**

_____
Brian A. Ratner

# EXHIBIT A

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE HARVARD DRUG GROUP, LLC, on behalf of itself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ASTRAZENECA PHARMACEUTICALS L.P., ASTRAZENECA L.P., ZENECA, INC., and ZENECA HOLDINGS, INC.<br><br>Defendants. | Civil Action No. 1:07-cv-00370-RWR |
| MEIJER, INC. and MEIJER DISTRIBUTION, INC., on behalf of themselves and all others similarly situated.<br><br>Plaintiffs,<br><br>v.<br><br>ASTRAZENECA PHARMACEUTICALS L.P., ASTRAZENECA L.P., ZENECA, INC., and ZENECA HOLDINGS, INC.<br><br>Defendants. | Civil Action No. 1:06-cv-02155-RWR |
| LOUISIANA WHOLESALE DRUG CO., INC., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ASTRAZENECA PHARMACEUTICALS L.P., ASTRAZENECA L.P., ZENECA, INC., and ZENECA HOLDINGS, INC.<br><br>Defendants. | Civil Action No. 1:06-cv-02157-RWR |

BURLINGTON DRUG COMPANY, INC.,
DIK DRUG COMPANY, and KING DRUG
COMPANY OF FLORENCE, INC., on behalf
of themselves and all others similarly situated,

        Plaintiffs,

v.

ASTRAZENECA PHARMACEUTICALS
L.P., ASTRAZENECA L.P., ZENECA, INC.,
and ZENECA HOLDINGS, INC.

        Defendants.

Civil Action No. 1:07-cv-00041-RWR

## [PROPOSED] CASE MANAGEMENT ORDER NO. 1

**WHEREAS**, several class actions have been filed against AstraZeneca Pharmaceuticals

L.P., AstraZeneca L.P., Zeneca, Inc., and Zeneca Holdings, Inc. (collectively "AstraZeneca" or

"Defendants"), in the United States District Court for the District of Columbia for alleged

violations of the antitrust laws regarding the sale of prescription omeprazole and/or any of its

enantiomers (including the prescription drugs Prilosec, Nexium, and any AB-rated generic

equivalents of either) by Defendants; and

**WHEREAS**, in order to promote judicial economy and avoid duplication, the Court finds

that it would be appropriate to provide for the consolidation of the above-captioned actions and

any other class actions filed in or transferred to this District on behalf of direct purchasers, and for

the appointment of co-lead counsel for the proposed class of purchasers.

**IT IS ORDERED** as follows:

I.    **CONSOLIDATION OF ACTIONS**

Pursuant to Federal Rule of Civil Procedure 42(a), the above captioned actions (each of which is brought as a class action and each of which asserts similar claims under Section 2 of the Sherman Act, 15 U.S.C. § 2) shall be consolidated for pre-trial proceedings, discovery, and trial (the "Consolidated Actions").

II.    **MASTER DOCKET AND SEPARATE ACTION DOCKETS**

A Master Docket is hereby established for the Consolidated Actions and for all other cases which may be filed in or transferred to this Court and consolidated herewith. The Master Docket shall be Case No. 1:07-cv-00370. Entries in the Master Docket shall be applicable to these Consolidated Actions as more fully set forth below. Separate dockets shall also be maintained for each of the actions comprising the Consolidated Actions, and entries shall be made therein in accordance with the regular procedures of the Clerk of the Court, except as modified by this Order.

III.    **MASTER FILE AND SEPARATE ACTION FILES**

A Master Docket is hereby established for the Consolidated Actions and for all other cases which may be filed in or transferred to this Court and consolidated herewith. The Master File shall be Case No. 1:07-cv-00370-RWR. The original of this Order shall be filed by the Clerk of the Court in the Master File herein established. The Clerk of Court shall maintain a separate file for each of the actions comprising the Consolidated Actions and filings shall be made therein in accordance with the regular procedures of the Clerk of Court except as modified by this Order. The Clerk of Court shall file a copy of this Order in each such separate file.

IV.     **CAPTION OF CASES**

    A.     Every pleading filed in the Consolidated Actions shall bear the following caption:

| | |
|---|---|
| _____ | ) |
| IN RE NEXIUM/PRILOSEC  DIRECT | ) |
| PURCHASER ANTITRUST LITIGATION | ) Master File No. 1:07-cv-00370-RWR |
| | ) |
| _____ | ) |
| | ) |
| THIS DOCUMENT RELATES TO: | ) |
| | ) |
| _____ | ) |

All papers previously filed and served to date in either of the actions consolidated herewith are deemed part of the record in the Consolidated Actions.

    B.     When a pleading or other court paper filed in the Consolidated Actions is intended to apply to all actions therein, the words "All Actions" shall appear immediately after the words "THIS DOCUMENT RELATES TO:" in the caption set out above.  When a pleading or other court paper is intend to be applicable only to one, or some, but not all of the Consolidated Actions, the party filing the document shall indicate the action(s) to which the document is intended to be applicable by last name of the named plaintiff(s) and the docket number(s).

V.      **FILING AND DOCKETING**

    A.     When a paper is filed and the caption, pursuant to Section IV.B. above, shows that it is to be applicable to "All Actions," the Clerk of Court (or the party filing via ECF) shall file such paper in the Master File and note such filing in the Master Docket.  No further papers need be filed or docket entries made.

    B.     When a paper is filed and the caption, pursuant to Section IV.B above, shows that it is to be applicable to fewer than all of the Consolidated Actions, the Clerk of Court (or the

party filing via ECF) shall file an original of such paper in the Master File and a copy in the file

of each specific action to which the paper is intended to be applicable, and shall note such filing

in the Master Docket and in the docket of each such action.  It shall be the responsibility of the

party filing such paper to supply the Clerk of Court with sufficient copies of any paper to

facilitate compliance with the directions of this paragraph.

VI.    **APPLICATION OF THIS ORDER TO**
       **SUBSEQUENTLY FILED OR TRANSFERRED CASES**

Counsel in the Consolidated Actions shall call to the attention of the Court the filing or

transfer of any related direct purchaser action arising out of similar facts and circumstances and

that therefore might properly be consolidated with the Consolidated Actions.  Counsel in the

Consolidated Actions shall promptly mail a copy of this Order to counsel for the plaintiff(s) in

each such subsequently filed or transferred direct purchaser action and to counsel for any

Defendants in each such action not already a party to any action then consolidated.  Promptly

thereafter, upon notice to counsel for the parties in each such action, counsel for plaintiffs in the

Consolidated Actions and counsel for Defendants shall submit to the Court a proposed Order

consolidating any such action.  Any party objecting to the application of this Order to such a

subsequently filed or transferred action, or to the subsequently filed or transferred actions

consolidation, shall, within twenty (20) days after the date upon which such a copy of this  Order

is mailed by counsel in the Consolidated Actions to counsel for such party, file a motion seeking

relief from this Order.

VII.    **ORGANIZATION OF COUNSEL**

A.    The Court designates the following to act as Co-Lead Counsel on behalf of all

plaintiffs in the Consolidated Direct Purchaser Class Actions, with the responsibilities hereinafter

described:

COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.
Michael D. Hausfeld
Daniel A. Small
Brian A. Ratner
1100 New York Avenue, NW
Suite 500 West
Washington, DC  20005-3964
Tel: (212) 408-4600
Fax: (212) 408-4699

Steig D. Olson
150 East 52nd Street, 30th Floor
New York, NY  10022
Tel: (212) 838-7797
Fax: (212) 838-7745

BOIES, SCHILLER & FLEXNER LLP
William A. Isaacson
Tanya S. Chutkan
5301 Wisconsin Avenue, NW, Suite 800
Washington, DC  20015
Tel: (202) 237-2727
Fax: (202) 237-6131

David Boies
333 Main Street
Armonk, New York  10504
Tel.: (914) 749-8200
Fax: (914) 749-8300

Richard B. Drubel
Kimberly Horton Schultz
26 South Main Street
Hanover, NH  03755
Tel: (603) 643-9090
Fax: (603) 643-9010

B.     Co-Lead Counsel in the Consolidated Direct Purchaser Actions, working

together in a coordinated fashion, shall have sole authority over the following matters on behalf

of all plaintiffs in the Consolidated Direct Purchaser Actions: (a) convening meetings of

counsel; (b) initiation, response, scheduling, briefing, and argument of all motions; (c) the

scope, order, and conduct of all discovery proceedings; (d) such work assignments to other

counsel as they may deem appropriate; (e) collecting time and expense reports from such other counsel on a periodic basis; (f) the retention of experts; (g) designation of which attorneys may appear at hearings and conferences with the Court; (h) the timing and substance of any settlement negotiations with Defendants; (i) the allocation of fees, if any are awarded by the Court; and (j) other matters concerning the prosecution of the Consolidated Direct Purchaser Actions.   Co-Lead Counsel shall be responsible for the overall direction and administration of the Consolidated Direct Purchaser Actions.

     C.     No motion shall be initiated or filed on behalf of any plaintiff in the Consolidated Direct Purchaser Class Actions except through Co-Lead Counsel.

     D.     Co-Lead Counsel, or their designees, shall have sole authority to communicate with Defendants' counsel and the Court on behalf of all plaintiffs in the Consolidated Direct Purchaser Class Actions.  Defendants' counsel may rely on all agreements made with Co-Lead Counsel and such agreements shall be binding on all counsel in the Consolidated Direct Purchaser Class Actions.

     E.     The organizational structure of plaintiff's counsel established in paragraph VII. herein shall apply to plaintiffs' counsel in the Consolidated Direct Purchaser Class Actions and any other related action filed and consolidated subsequently.

     F.     **Time Records.**     Plaintiffs' counsel shall keep contemporaneous time records and shall periodically submit summaries or other records of time and expenses to Co-Lead Counsel, or their designee.

## VIII.     <u>FILING AND SERVICE OF DOCUMENTS</u>

The Parties shall file and serve all papers in accordance with the Electronic Case Filing Policies and Procedures ("ECF Procedures") of this Court.  Defendants' service of papers by ECF

Procedures on each Co-Lead Counsel constitutes service on plaintiffs. Plaintiffs shall serve

papers on Defendants by ECF Procedures. To the extent that papers are filed under seal, the

papers shall be served on Co-Lead Counsel.


**SO ORDERED.**


Dated: _____, 2007      _____
                                       Hon. Richard W. Roberts
                                       United States District Judge

# EXHIBIT B

### *COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.*

COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C. is widely recognized as one

of the leading plaintiffs' law firms in the United States. Cohen, Milstein, Hausfeld & Toll,

P.L.L.C. ("CMHT") represents individuals and small businesses in many of the major class

action cases litigated in the United States for violations of the antitrust laws. The firm is one

of best-known firms handling plaintiffs' class actions in the country and is at the forefront of

numerous innovative legal actions that are expanding the quality and availability of legal

recourse for aggrieved individuals and businesses. CMHT has obtained numerous landmark

judgments and settlements for individuals and businesses in the United States and abroad.

Some of the firm's most significant antitrust cases include:

* *In re Vitamins Antitrust Litigation*, MDL No. 1285 (D.D.C.). CMHT served as co-lead counsel for two certified classes of businesses that directly purchased bulk vitamins and were overcharged as a result of a ten year global price-fixing and market allocation conspiracy. Chief Judge Hogan approved four major settlements between certain vitamin defendants and Class Plaintiffs, including a landmark partial settlement of $1.1 billion. In a later trial before Chief Judge Hogan concerning four Class Plaintiffs' remaining unsettled Vitamin B4 (choline chloride) claims, a federal jury in Washington unanimously found Japan's second largest trading company, Mitsui & Co., Ltd., its wholly-owned U.S. subsidiary Mitsui & Co. (U.S.A.), Inc., DuCoa, LP, a choline chloride manufacturer based in Highland, Illinois, and DuCoa's general partner, DCV, Inc. liable for participating in the conspiracy and ordered them to pay $49,539,234, which is trebled to $148,617,702 under the federal antitrust laws. The case was subsequently settled against the Mitsui defendants.

* *Kruman v. Christie's International PLC, et al.,* Docket No. 01-7309 (S.D.N.Y.). A $40 million settlement on behalf of all persons who bought or sold items through Christie's or Sotheby's auction houses in non-internet actions was recently approved. CMHT served as one of three lead counsel on behalf of foreign plaintiffs. In certifying the class and approving the settlement, Judge Kaplan characterized the settlement as a "good result" particularly in light of the significant obstacles that faced plaintiffs and plaintiffs' counsel in the litigation. The settlement marks the first time that claims on behalf of foreign plaintiffs under U.S. antitrust laws have resolved in a U.S. court, a milestone in U.S. antitrust jurisprudence.

* *Dukes v. Wal-Mart Stores, Inc.,* No. C-01-2252 (N.D. Cal.). CMHT is one of the co-lead counsel in this discrimination case. In June 2004, U.S. District Court Judge Martin Jenkins ruled that six current and former Wal-Mart employees from California may represent all female employees of Wal-Mart who worked at its U.S. stores anytime after December 26, 1998 in a nationwide sex discrimination class action lawsuit (appeal pending). As the largest civil rights class action ever certified against a private employer, the Judge described the case as "historic in nature, dwarfing other employment discrimination cases that came before it." The action charges that Wal-Mart discriminates against its female retail employees in pay and promotions. The class in this case includes more than 1.5 million current and former female employees of Wal-Mart retail stores in America, including Wal-Mart discount stores, super centers, neighborhood stores, and Sam's Clubs.

\*    *In re The Exxon Valdez Litigation,* No. A89-095 Civ. (D. Ak.). The firm was selected from dozens of law firms around the country by federal and state judges in Alaska to serve as co-lead counsel for plaintiffs in the largest environmental case in United States history that resulted in a jury verdict of more than $5 billion (reversed and remanded for revised punitive damages award; further proceedings pending).

\*    *Holocaust Litigation.* In the historic Swiss Banks litigation, CMHT served, *pro bono,* as co-lead counsel for Holocaust survivors against the Swiss banks that collaborated with the Nazi regime during World War II by laundering stolen funds, jewelry and art treasures. Cohen Milstein obtained a $1.25 billion settlement, leading the presiding judge to call the firm's work "indispensable." *See In re Holocaust Victim Assets Litig.,* Case No. CV 96-4849 (ERK) (MDG) (E.D.N.Y.) (Memorandum of Chief Judge Korman dated July 26, 2002). The Firm was also a lead counsel in litigation by survivors of World War II-era forced and slave labor in litigation against the German companies that profited from using the labor of concentration camp inmates. This litigation, which resulted in an unprecedented settlement of $5.2 billion, was resolved by multinational negotiations involving the defendants, plaintiffs' counsel, and the governments of several countries for approximately two million claimants.

\*    *Human Rights Cases.* CMHT has contributed over 37,000 hours of time to human rights and *pro bono* cases since 1996. As an example, the Firm represented eight survivors and/or families of the victims of the September 11, 2001 attack on the Pentagon before the Federal compensation fund. Cohen Milstein has obtained a substantial recovery for each, including the highest recovery to date, $6.8 million, for an injured individual.

\*    *Roberts v. Texaco, Inc.,* 94-Civ. 2015 (S.D.N.Y.). CMHT represented a class of African-American employees in this landmark litigation that resulted in the then-largest race discrimination settlement in history ($176 million in cash, salary increases and equitable relief). The Court hailed the work of class counsel for, *inter alia,* "framing an imaginative settlement, that may well have important ameliorative impact not only at Texaco but in the corporate context as a whole …"

\*    *In re Relafen® Antitrust Litigation,* No. 01-12239-WGY (D. Mass.). CMHT has served as co-lead counsel on behalf of a class of direct purchasers of Relafen — a non-steroidal anti-inflammatory drug sold by SmithKline Beecham Corporation PLC and GlaxoSmithKline Beecham Corporation PLC (collectively, "GSK"). As alleged in the complaint, GSK unlawfully extended its monopoly in the U.S. market for Relafen and its generic equivalents by fraudulently procuring an invalid patent and using that invalid patent to prevent generic competition. On April 9, 2004, after significant litigation, the United States District Court for the District of Massachusetts finally approved the $175 million settlement of this action.

\*    *Nate Pease, et al. v. Jasper Wyman & Son, Inc.,* et al., Civil Action No. 00-015 (Knox County Superior Court, Maine). CMHT has been co-lead counsel on this case since its inception in 2000. On November 18, 2003, a Maine state court jury found three blueberry processing companies liable for participating in a four-year price-fixing and non-solicitation conspiracy that artificially lowered the prices defendants paid to approximately 800 growers for wild blueberries. The jury ordered defendants Cherryfield Foods, Inc., Jasper Wyman & Son, Inc., and Allen's Blueberry Freezer, Inc. to pay $18.68 million in damages, the amount which the growers would have been paid absent the defendants' conspiracy. After a mandatory trebling of this damage figure under Maine antitrust law, the total amount of the verdict for the plaintiffs is just over $56 million. The three defendants are jointly and severally liable for the damages.

\*    *Oncology & Radiation Associates, P.A. v. Bristol Myers Squibb Co., et al.,*

Case No. 1:01CV02313 (D.D.C.). CMHT has been co-lead counsel in this case since its inception in 2001. Plaintiffs alleged that Bristol-Myers Squibb unlawfully monopolized the United States market for paclitaxel, a cancer drug discovered and developed by the United States government, which Bristol sells under the brand name Taxol. Bristol's scheme included a conspiracy with American BioScience, Inc., a generic manufacturer, to block generic competition. Cohen, Milstein's investigation and prosecution of this litigation on behalf of direct purchasers of Taxol led to a settlement of $65,815,000 that was finally approved by U.S. District Judge Emmet G. Sullivan on August 14, 2003 and preceded numerous Taxol-related litigations brought by the Federal Trade Commission and State Attorneys General offices.

      *     *In re Lorazepam and Clorazepate Antitrust Litigation*, MDL No.1290,(D.D.C.). Generic drug maker Mylan Pharmaceuticals, Inc. entered exclusive deals to lock up supply of the raw ingredients for two popular anti-anxiety medications. Mylan then raised the prices of the drugs by thousands of percent. CMHT served as co-lead counsel and obtained a $ 35 million settlement for direct purchasers of the affected medications.

      *     *In re Flat Glass Antitrust Litigation*, MDL No. 1200 (W.D. Pa.). United States District Court for the Western District of Pennsylvania. Plaintiffs allege that the five major manufacturers of float glass and automotive replacement glass conspired to fix prices on a wide variety of glass products. CMHT served as co-lead counsel and obtained a total of $ 61.7 million in settlement funds on behalf of glass shops, window manufacturers, and others who directly purchased the affected products from the defendants.

      *     *IVAX Corp. v. Atofina Chemicals, Inc., et al.*, Civ. No. 02-00593 (D.D.C.). Plaintiffs allege that the major global producers of certain chemicals known as organic peroxides have conspired to fix prices on their products. Organic peroxides are used in the manufacture of plastics and certain rubber products. CMHT is lead counsel and obtained a $16 million settlement with one defendant, Akzo Nobel Chemicals BV, on behalf of direct purchasers of the chemicals. The remainder of the case is still pending.

      *     *Diamond Chemical Co., Inc. v. Atofina Chemicals, Inc., et al.*, Case No. 02CV1018 (D.D.C.). Plaintiffs alleged that the major global producers of certain chemicals known as Monochloroacetic Acid ("MCAA") have conspired to fix prices on their products. CMHT is lead counsel and obtained settlements of more than $14 million against the defendants. The settlements led to a distribution to approved claimants of a remarkable 45% of approved MCAA purchases.

      *     *In Re Buspirone Antitrust Litigation,* MDL No. 1413 (S.D.N.Y.). Plaintiffs allege that Bristol Myers-Squibb Company, a producer of the drug BuSpar7, unlawfully maintained a monopoly in violation of federal and state antitrust and unfair competition laws. A $90 million settlement was preliminarily approved in April 2003. CMHT served as one of four co-lead counsel.

      *     *In re Microsoft Corp. Antitrust Litigation*, MDL No. 1332 (D. Md.). CMHT is one of two co-chairs of the plaintiffs' lead counsel committee. The firm is responsible for leading this massive litigation, not only on behalf of the dozens of cases filed in federal court, but also through close coordination with the many state-court actions pending around the country.

      *     *In re Commercial Explosives Antitrust Litigation* (D. Utah). Plaintiffs alleged a conspiracy among manufacturers of explosives to set prices. CMHT was co-lead counsel in this price-fixing case that resulted in a settlement fund totaling over $72 million.

      *     *In re Commercial Tissue Antitrust Litigation* (N.D. Fla). CMHT joined

forces with the State of Florida and other plaintiffs' attorneys to bring this class action against the major manufacturers of commercial tissue products which included commercially sold paper towels, toilet tissue and napkins. The case was scheduled to go to trial in Gainesville, Florida just a few months before it was settled. CMHT assisted in settling the case for $56 million.

   *  *Cothran v. Brunswick Corp.* (S.D. Ill.). CMHT took a lead role in representing a nationwide class of boat dealers on claims of monopolization of the inboard and stern drive marine engine market. The case resulted in a settlement of over $20 million.

   *  *In re Domestic Air Transportation Antitrust Litigation* (N.D. Ga.). Plaintiffs alleged conspiracy among major airlines to set prices. In one of the largest consumer class actions ever brought to a successful conclusion, CMHT was one of the lead counsel and obtained a settlement of travel discounts and cash totaling $458 million for the class of individuals and businesses.

   *  *In re Infant Formula Consumer Antitrust Litigation* (multiple state courts). CMHT instituted price-fixing cases on behalf of indirect-purchasers in 17 states under state antitrust laws against three companies who conspired to drive up the price of infant formula. The cases have resulted in settlements of $64 million for purchasers of infant formula.

   CMHT was in the forefront of filing antitrust claims on behalf of indirect purchasers. In 1993 and 1994, the firm filed state-court actions in 18 states on behalf of indirect purchasers of infant formula. This was the first effort to systematically and simultaneously pursue treble damages claims on behalf of indirect-purchasing consumers in all states in which their antitrust laws permitted such claims. This approach, and variations of it, have since become the accepted model for pursuing antitrust damages on behalf of indirect-purchasing consumers. Prior to the infant formula consumer litigation, state indirect cases had been filed almost exclusively in California, although 17 other states had the requisite legislation on their books.

   CMHT has been in the forefront of the development of international antitrust theory and litigation of claims. As the global economy has produced world-wide conglomerates, so too has the nature of antitrust violations changed. Thus, for example, in *Kruman v. Christie's International PLC, et al.*, Docket No. 01-7309, and *In re Vitamins Antitrust Litigation*, MDL 1285 (D.D.C.) (including coordinating with the law firm Irwin Mitchell to pursue a damages action in the UK on behalf of UK purchasers), both the parties and the anticompetitive actions were played out on a world, rather than domestic, stage.

CMHT was established in March l986 and has satellite offices in New York, Chicago,

Philadelphia, and London. From 1969 until its formation in 1986, the firm was the

Washington, D.C. office of the Philadelphia law firm currently known as Kohn, Swift & Graf,

P.C. Members of the firm have played a prominent role in most of the major class actions

since the Fed. R. Civ. R. 23 was amended in 1966. These antitrust cases, organized by type

of claims advanced, include:

### *Price-Fixing Cases*

*In re North Atlantic Air Travel Antitrust Litigation*, Civ. Action No. 84-ll03 (D.D.C.). The firm, as co-lead counsel, obtained a class settlement of $30 million in coupons for air travelers between the United States and England;

*In re Screws Antitrust Litigation*, MDL No. 443 (D. Mass.). The firm, as co-lead counsel, obtained a class settlement of approximately $20 million;

*Ocean Shipping Antitrust Litigation*, M.DL No. 395 (S.D.N.Y). The firm, as co-lead counsel, obtained a class settlement of approximately $50 million;

*In re Commercial Explosives Antitrust Litigation*, Consolidated Case No. 2:96md 1093S (D. Utah). The firm, as co-lead counsel, obtained a settlement of $77 million;

*In re Ampicillin Antitrust Litigation,* MDL No. 50 (D.D.C.). The firm represented the State of Michigan in a multidistrict litigation alleging a price-fixing conspiracy by manufacturers of ampicillin;

*In re Sugar Antitrust Litigation*, MDL No. 210 (N.D. Cal.). The firm represented small businesses/consumers alleging a price-fixing conspiracy among sugar refiners and obtained a multi-million dollar settlement;

*In re Travel Agent Commission Antitrust Litigation,* MDL No. 1058 (D. Minn.). The firm represented a class of travel agents claiming a horizontal price-fixing agreement by major airlines and obtained a multi-million dollar settlement;

*Nasdaq Market Makers Antitrust Litigation*, MDL No. 1023 (S.D.N.Y.). The firm focused on discovery and expert work in this case where a billion dollar settlement was obtained for the class of purchasers of certain stock on NASDAQ;

*In re Compact Disc Antitrust Litigation*, MDL No. 1216 (C.D. Cal.). Represented direct purchasers of compact discs on price-fixing allegations;

*In re Infant Formula Antitrust Litigation,* MDL No. 878 (N.D. Fla.);

*Carbon Dioxide Antitrust Litigation*, MDL No. 940 (M.D. Fla.);

*Catfish Antitrust Litigation*, MDL No. 928 (N.D. Miss.);

*Chain Link Fence Antitrust Case*, Master File No. CLF-1 (D. Md.);

*Ocean Shipping Antitrust Litigation*, M.DL No. 395 (S.D.N.Y.);

*High Fructose Corn Syrup Antitrust Litigation*, MDL No. 1087 (C.D. Ill.);

*Commercial Tissue Products Antitrust Litigation*, MDL No. 1189 (N.D. Fla.);

*In re Bulk Popcorn Antitrust Litigation*, No. 3-89-710 (D. Minn.);

*In re Polypropylene Carpet Antitrust Litigation,* MDL No. 1075 (N.D. Ga.);

*Drill Bits Antitrust Litigation*, No. H-91-627 (S.D. Tex.);

*Paper Systems Inc., et al. v. Mitsubishi Corp., et al.* (E.D. Wisc.);

*In re Flat Glass Antitrust Litigation*, MDL No. 1200 (W.D. Pa.);

*In re Lease Oil Antitrust Litigation*, MDL No. 1206;

*In re Cigarette Antitrust Litigation*, MDL No. 1342 (N.D. Ga.) (Served as co-lead counsel representing class of cigarette purchasers in price-fixing case against tobacco industry.);

*In re Mercedes -Benz Antitrust Litigation,* Master File No. 99-4311 (AMW);

*In re Linerboard Antitrust Litigation,* MDL. No. 1261 (E.D. Pa.).

### Monopolization

*In re Smokeless Tobacco Antitrust Litigation*, Civ. A. Nos. 00-1415 and 00-1454 (D.D.C.). CMHT represents direct purchasers of smokeless tobacco against United States Tobacco Co.;
*In re Microsoft Corp. Antitrust Litigation*, MDL No. 1332 (D. Md.). CMHT is representing putative classes of direct purchasers of Microsoft operating system software and applications software;
*Amo Marine Products, Inc., et al. v. Brunswick Corp.*, No. 99-243 (D. Minn.). Represented nationwide class of boat dealers on claims of monopolization of the inboard and stern drive marine engine market;
*Chastain v. AT&T*, Civ. Action No. 2088-70 (D.D.C.). CMHT achieved large judgments on behalf of small independent interconnect telephone companies in two matters challenging various aspects of AT&T's abuse of monopoly power when AT&T was represented by Covington & Burling and Dickstein Shapiro Morin & Oshinsky;
*Societe Liz v. Charles of the Ritz*, Civ. Action No. 85-1129 (D.D.C.). Represented a small retailer against one of the world's largest perfume manufacturers alleging monopolization of the perfume market;
*Cox v. Champion*. Represented a small lumber company against an international pulp manufacturer alleging a price-fixing scheme and monopolization of the lumber market.

### Tying

*McGeorge v. British Leyland* (E.D. Va.). Represented an automobile dealership charging a British automobile manufacturer with an illegal tie-in;
*In re Clozapine Antitrust Litigation* (N.D. Ill.). Represented class of purchasers of psychotropic drug in tying case that resulted in settlement representing nearly 100 percent of damages.

### Group Boycott

*In re Lower Lake Erie Iron Ore Antitrust Litigation,* MDL No. 587 (E.D. Pa.). Represented a small trucking company in a group boycott case which after trial resulted in a $12 million award to the client.

### Territorial Allocation

*In re Cardizem CD Antitrust Litigation*, MDL No. 1278 (E.D. Mich.). Represented a putative class of indirect purchasers alleging unlawful efforts to delay entry of generic prescription drug competition;
*In re Terazosin Hydrochloride Antitrust Litigation*, MDL No. 1317 (S.D. Fla.). Represented a putative class of indirect purchasers against brand name drug manufacturer for delaying entry of generic substitutes.

### Supply Restrictions

*Erie Forge and Steel, Inc. v. Cyprus Minerals Co., et al.*, No. 94-404 (W.D. Pa.). (Nationwide class action on behalf of direct purchasers alleging conspiracy to restrict production of molybdenum.);
*California Sales and Marketing v. Satoshi Iue*, No. C738971 (Cal. Sup. Ct.). Retained by 33 sales representatives of the Sanyo Fisher (USA) Corporation alleging, *inter alia*, conspiracy among Japanese VCR manufacturers to under-supply the United States market with low-end VCRs.

*Exclusive Dealing*

*In re Lorazepam and Clorazepate Antitrust Litigation*, MDL No. 1290 (D.D.C.).  Represented a putative class of direct purchasers alleging conspiracy to tie up supply of prescription drug active ingredient.

*Franchise*

*Call Carl, Inc. v. British Petroleum,* Civ. No. 73-1059-4 (D. Md.).  Retained by independent gasoline dealer franchisees of British Petroleum alleging unlawful termination;
*Vaughn v. General Foods* (N.D. Ind.).  Retained by Burger Chef franchisees who claimed a fraud/deception scheme in their franchise relationship;
*Entre Computers* (E.D. Va.).  Retained by franchisees alleging grey market sales/resale price maintenance by their franchiser.


For more additional updates on the firm's antitrust cases, please see the firm's website

at www.cmht.com.


## QUOTES FROM JUDGES, JOURNALISTS AND PUBLICATIONS REGARDING CMHT'S WORK

CMHT "outshone the bevy of outfits fighting for courtroom action as the most in-demand plaintiffs' antitrust practice last year, according to [a] survey of the 300 largest firms in the United States."
Competition Law 360, *Cohen Milstein Tops Antitrust Plaintiffs Ranking*, Feb. 14, 2007, http://competition.law360.com/Secure/ printview.aspx?id=18602.

In 2006, the National Law Journal named Cohen Milstein one of the top 11 plaintiffs' firms in the nation.

The National Law Journal, *The Plaintiffs' Hot List*, October 9, 2006, http://www.cmht.com/pdfs/06hotlist.pdf

"In other words, people who run corporations are generally deterred by the fact that there are the Wolf Haldensteins and Cohen Milsteins out there.  I think they are.  I think they know it and I think they are deterred…."
Judge T.S. Ellis, III, *In re Bearing Point Securities Litigation,* 7/16/04; 03-1062-A EDVA Motions Hearing.

"Cohen Milstein's experience litigating large plaintiff class actions is impressive…The backgrounds of Herbert E. Milstein and Steven J. Toll are particularly impressive."
Judge Walker, *In re Quintus Securities Litigation*, 148 F. Supp. 2d 967,976 (N.D. Cal. 2001).

"I want to mention on the record the extraordinary work of the Hausfeld firm in the preparation and the submission of this claim.  Mr. Hausfeld in numerous other claims as well has exhibited the type of professionalism and skill that have made the Fund a success and my job that much easier.  I am grateful to him for his zeal, competence and professionalism.  And I thank the firm . . . for their wonderful work in this matter."
Ken Feinberg, Special Master, 9/11 Victim's Compensation Fund.

"More importantly, the ingenuity here comes heavily from the lawyers on the plaintiff's side. It was they who spotted something others had missed – based on an ambiguity in a 'foreign

assistance' statute – and ran with it, all the way to the Supreme Court.  Indeed the amazing aspect of F. Hoffman-LaRoche, Ltd. v. Empagran is not so much the answers it provided but that some of the questions needed answering at all."
David Samuels, from *Matter of the Year*, <u>Global Competition Review</u>, Feb. 2005, in reference to the *Empagran* case.

"[T]his is a very challenging and interesting case involving what we call antitrust issues between the parties. That's anticompetitive-type business issues involving, I think, some of the finest business litigating lawyers or litigation-type lawyers in the country that are before you that you will have the privilege to listen to."
Chief Judge Thomas Hogan in remarks to the jury pool, *In re Vitamins Antitrust Litigation -- Animal Science Products, Inc., et al. v. Chinook Group, Ltd., et al.,* May 28, 2003 Trial Tr. at 25:1-6.

"[T]his is a serious case, and you had the pleasure of having very excellent lawyers on both sides appear before you."
Chief Judge Hogan, comments to the jury after they returned a verdict of $49.5 million in damages for the Class Plaintiffs, *In re Vitamins Antitrust Litigation -- Animal Science Products, Inc., et al. v. Chinook Group, Ltd., et al.,* June 13, 2003 Trial Tr. at 1520:8-10.

Chief Judge Korman issued a Memorandum on July 26, 2002 recognizing the indispensable work "the two leading class action lawyers in the United States, Melvin Weiss and Michael Hausfeld" undertook in representing the class without a fee and achieving a $1.25 billion settlement.
*In re Holocaust Victim Assets Litig.*, Case No. CV 96-4849 (ERK)(MDG).

Cohen, Milstein represented a class of African-American employees in this landmark litigation that resulted in the largest race discrimination settlement in history ($176 million in cash, salary increases and equitable relief). The Court hailed the work of class counsel for *inter alia* "framing an imaginative settlement that may well have important ameliorative impact not only at Texaco but in the corporate context as a whole. . . ."
*Roberts v. Texaco, Inc.,* 94-Civ. 2015 (S.D.N.Y.)

"Obviously, the skill of the attorneys, and I'm not going to spend the time reviewing it, I'm familiar with counsel, and they, as I said, are among the best antitrust litigators in the country."
Chief Judge Thomas F. Hogan (D.D.C.), *In re Lorazepam and Clorazepate Antitrust Litig.*

"[As] indicated in the discussion of the adequacy of the settlement, plaintiffs' counsel have obtained an excellent result for the class."
*Spencer v. Comserv Corp.,* Civ. 4-84-474, 1986 WL 15155, at *10-11 (D. Minn. Dec. 30, 1986) (CMHT served as lead counsel).

"Hausfeld could be sweetness and light one moment and anger and darkness the next.  He was unpredictable and at times unreasonable. . . . But he was central to any successful negotiation because he had a keen sense of where the bottom line was."
Stuart Eizenstat on the Holocaust cases, <u>The London Times</u>, Sept. 28, 2004.

The <u>Washingtonian</u> has listed Michael Hausfeld for the past several years as one of Washington's 75 best lawyers, saying he "consistently brings in the biggest judgments in the history of law" and that he is "a Washington lawyer determined to change the world - and succeeding."

The <u>Corporate Legal Times</u> called Cohen, Milstein "the most effective class action law firm in the United States.

Biographical sketches of some of the firm's antitrust attorneys who will be working on this matter follow:

## MICHAEL D. HAUSFELD

Michael Hausfeld, one of the country's top civil litigators, joined the Firm in 1971. He is Head of the firm's Antitrust and International practice groups.

Mr. Hausfeld's career has included some of the largest and most successful class actions in the fields of human rights, discrimination and antitrust law. He long has had an abiding interest in social reform cases, and was among the first lawyers in the U.S. to assert that sexual harassment was a form of discrimination prohibited by Title VII; he successfully tried the first case establishing that principle. He represented Native Alaskans whose lives were affected by the 1989 Exxon Valdez oil spill; later, he negotiated a then-historic $176 million settlement from Texaco, Inc. in a racial-bias discrimination case.

In *Friedman v. Union Bank of Switzerland*, Mr. Hausfeld represented a class of victims of the Holocaust whose assets were wrongfully retained by private Swiss banks during and after World War II. The case raised novel issues of international banking law and international human rights law. He successfully represented the Republic of Poland, the Czech Republic, the Republic of Belarus, the Republic of Ukraine and the Russian Federation on issues of slave and forced labor for both Jewish and non-Jewish victims of Nazi persecution during World War II. He currently represents Jubilee 2000, Khulumani, and other NGOs in litigation involving abuses under apartheid law in South Africa, and is pursuing a RICO litigation against the tobacco industry with regard to the sale of and representations on "light" cigarettes.

Mr. Hausfeld has a long record of successful litigation in the antitrust field, on behalf of both individuals and classes, in cases involving monopolization, tie-ins, exclusive dealings and price fixing. He is or has been co-lead counsel in antitrust cases against manufacturers of genetically engineered foods, managed healthcare companies, bulk vitamin manufacturers, technology companies and international industrial cartels. He is actively involved in ongoing

investigations into antitrust cases abroad, and was the only private lawyer permitted to attend and represent the interests of consumers worldwide in the 2003 closed hearings by the EU Commission in the Microsoft case.

Chief Judge Edward Korman (E.D.N.Y.), has noted that Mr. Hausfeld is one of the two "leading class action lawyers in the United States." He has been profiled in, and recognized by, many articles and surveys. Most recently, a *Forbes* magazine article reported on Mr. Hausfeld's work to establish an international alliance for the protection of consumers and investors worldwide. He was named one of thirty master negotiators in *Done Deal: Insights from Interviews with the World's Best Negotiators*, by Michael Benoliel, Ed.D. *The Wall Street Journal* profiled him and his practice, and he has been recognized by *The National Law Journal* as one of the "Top 100 Influential Lawyers in America." He has been described by one of the country's leading civil rights columnists as an "extremely penetrating lawyer", and by a colleague (in a *Washington Post* article) as a lawyer who "has a very inventive mind when it comes to litigation. He thinks of things most lawyers don't because they have originality pounded out of them in law school." *The New York Times* referred to Mr. Hausfeld as one of the nation's "most prominent antitrust lawyers," and *Washingtonian Magazine* has listed Mr. Hausfeld in several surveys as one of Washington's 75 best lawyers, saying he "consistently brings in the biggest judgments in the history of law" and that he is "a Washington lawyer determined to change the world -- and succeeding."

His most recent awards include the 2002 B'Nai Brith Humanitarian of the Year award; the Simon Wiesenthal Center Award for Distinguished Service; and the U.S. Department of Energy's Human Spirit Award, presented "in tribute to a person who understands the obligation to seek truth and act on it is not the burden of some, but of all; it is universal."

He is a frequent speaker on antitrust, human rights and international law, most recently participating in a panel discussion at the Spring Meeting of the ABA Section of Antitrust Law entitled "International Antitrust: Developments After Empagran and Intel" and at the School of Oriental and African Studies (SOAS) Annual Meeting in London entitled

"Human Rights in An Integrated World:  The Apartheid Reparations Litigation in the USA."
He taught Masters Degree courses at Georgetown University Law Center from 1980 to 1987,
and was an Adjunct Professor at the George Washington University Law School from 1996 to
1998 and now sits on its Board of Directors.

Mr. Hausfeld is a graduate of Brooklyn College, receiving a B.A. in Political Science
with a minor in Russian History (*cum laude*, 1966) and the National Law Center, George
Washington University (J.D., *with honors*, 1969).  He was a member of the Order of the Coif
and the Board of Editors for the George Washington Law Review (1968-69).


### DANIEL A. SMALL

Daniel A. Small is a 1981 graduate of Colgate University (B.A., *cum laude*); he
graduated from Washington College of Law in 1986.  He joined Cohen, Milstein, Hausfeld &
Toll, P.L.L.C. after serving as law clerk to the Honorable Roger Vinson, U.S. District Judge
for the Northern District of Florida (1986 to 1988).  He specializes in antitrust litigation and
has represented plaintiffs and plaintiff classes in numerous antitrust actions.  He is co-chair of
the firm's  Antitrust Practice Group.

Mr. Small has served as lead counsel for the plaintiffs in multiple antitrust class
actions.  The court appointed Mr. Small lead counsel in *Paper Systems Inc., et al. v.
Mitsubishi Corp., et al.*, No. 96-C-0959 (E.D. Wisc.), involving an international conspiracy to
fix prices of jumbo roll thermal facsimile paper.  The defendants settled for over $20 million,
substantially in excess of the $14 million in damages estimated by the plaintiffs' expert.  Mr.
Small was co-lead counsel for the end-user plaintiffs in *In re Buspirone Antitrust Litig.*, MDL
No. 1413 (S.D.N.Y.).  The case, which presented monopolization and market allocation
claims against a brand name drug manufacturer for delaying generic entry, settled for $90
million.  Mr. Small is lead counsel for the plaintiffs in *Pease, et al. v. Jasper Wyman & Son,
et al.*, No. CV-00-015 (Super. Ct., Knox Cty., Me.), a price-fixing class action on behalf of

Maine wild blueberry growers. The case was tried in November 2003. The jury returned a verdict for the plaintiff class in the amount of $18.68 million, which after trebling and the addition of attorney fees and other costs, resulted in a judgment of approximately $60 million.

Mr. Small has substantial appellate experience, including briefing and arguing *Free v. Abbott Laboratories*, No. 99-391, in the United States Supreme Court. The case presented the issue of whether a supplemental jurisdiction statute overruled *Zahn v. International Paper Co.* The Court split 4-4, with Justice O'Connor recusing herself. Mr. Small successfully briefed and argued appeals before the Seventh Circuit Court of Appeals in *In re Brand Name Prescription Drug Antitrust Litig.*, 123 F.3d 599 (7th Cir. 1997), on the issue of whether the district court had subject matter jurisdiction, and in *Paper Systems, Inc. v. Nippon Paper Industries Co., Ltd.*, 281 F. 3d 629 (7th Cir. 2002), holding that the federal direct purchaser rule does not immunize a defendant from liability for the direct sales of its co-conspirators. Mr. Small briefed and argued the appeal in *Mack v. Bristol-Myers Squibb Co.*, 1996-1 Trade Cas. (CCH) 71,401 (Fla. 1st DCA 1996), the first opinion construing the Florida Deceptive and Unfair Trade Practices Act to permit indirect purchasers to sue for damages for antitrust violations.

Among the additional antitrust cases on which Mr. Small has worked or is working are: *In re Infant Formula Antitrust Litig.*, MDL No. 878 (N.D. Fla.) (as well as 18 state-court actions on behalf of indirect purchasers of infant formula); *Drill Bits Antitrust Litig.*, No. H-91-627 (S.D. Tex.); *In re Lease Oil Antitrust Litigation*, MDL No. 1206; *In re Lorazepam & Clorazepate Antitrust Litig.*, MDL No. 1290 (D.D.C.); *In re Terazosin Hydrochloride Antitrust Litig.*, No. 99-MDL-1317 (S.D. Fla.); *In re Microsoft Antitrust Litig.*, MDL No. 1332 (D. Md.) (in which he is serving as chair of the experts' committee); *Ferko v. NASCAR*, No. 4:02-CV-50 (E.D. Tex.) (asserting monopolization and group boycott claims regarding

the allocation of Winston Cup race dates); and *Rasmussen v. General Motors*, No. 03-CV-1828 (Cir. Ct., Milwaukee Cty., Wisc.) (and related cases in eight other states) (state-wide class actions alleging conspiracy among auto manufacturers and distributors to maintain dual price system between United States and Canada).

## BRIAN A. RATNER

Brian Ratner joined Cohen, Milstein in 2001. Mr. Ratner is a member of the firm's Antitrust Practice Group and is Deputy Head of the firm's International Practice Group.

Mr. Ratner has worked extensively on the matter of *In Re Vitamins Antitrust Litigation* (D.D.C.) on behalf of two certified classes of vitamin direct purchasers who were overcharged as a result of a ten-year global price-fixing and market allocation conspiracy. Cohen Milstein has served as Co-Lead Counsel in the case since 1999, recovering over one billion dollars in settlements for the classes. Mr. Ratner acted as one of the lead lawyers in a 2003 trial in the case before Chief Judge Hogan, in which a jury unanimously found in favor of the class, awarding them $148,617,702 in trebled damages. The National Law Journal ranked this verdict as the 12th largest in 2003.

Mr. Ratner has also litigated, among other matters: *Empagran, S.A. et al. v. F. Hoffmann-LaRoche, Ltd., et al.* (D.D.C.), a case alleging a global vitamins price-fixing and market allocation conspiracy on behalf of foreign purchasers (led to key ruling by the U.S. Supreme Court); *Molecular Diagnostics Laboratories v. Hoffman-La Roche, Inc., et al.* (D.D.C.), a case alleging unlawful monopolization on behalf of a class of purchasers of an enzyme used in DNA amplification, human-genome research, and medical diagnostics; *In Re Publication Paper Antitrust Litigation* (D. Conn.), alleging price fixing and market allocation against magazine paper manufacturers; and *Oncology & Radiation Associates v. Bristol-Myers Squibb Co.* (D.D.C.), alleging monopolization against a drug manufacturer, which settled for $65 million.

Mr. Ratner has worked substantially on international antitrust issues. These efforts have included speaking at, organizing, and participating in conferences in Europe and Australia and submitting numerous related written articles and papers encouraging the private civil enforcement of competition laws outside the United States.

Prior to joining Cohen Milstein, Mr. Ratner worked for Jones, Day, Reavis & Pogue where he focused on complex civil and commercial litigation, corporate securities litigation, and antitrust. He also performed merger clearance and corporate counseling antitrust work related to the CBS/Viacom and AOL/Time Warner mergers.

Mr. Ratner graduated from Indiana University-Bloomington with a B.A. in Journalism (1996) and a second major in Political Science. At Indiana, he was a member of the Mortar Board National Honor Society, did undergraduate work at Hebrew University in Jerusalem, Israel, and worked on several political campaigns including the re-election campaign of former U.S. Senator Harris Wofford. Mr. Ratner obtained his law degree from the University of Pittsburgh School of Law (1999), where he was the Managing Editor of the Journal of Law and Commerce. During law school, Mr. Ratner clerked for the Hon. Donetta W. Ambrose (W.D. Pa.).

Mr. Ratner is admitted to practice in the District of Columbia, Pennsylvania, New Jersey, the United States District Court for the District of Columbia, the United States Court of Appeals for the District of Columbia Circuit, the United States Court of Appeals for the Second Circuit, and the United States Supreme Court.

## STEIG D. OLSON

Steig D. Olson joined the Firm as an Associate in Cohen, Milstein's New York office in 2003 as a member of the Antitrust practice group.

He is currently involved in, among other cases, *In re Plastics Additives Antitrust Litigation*, (E.D.Pa) in which plaintiffs allege a price-fixing conspiracy by manufacturers of additives for plastics in the United States; *Molecular Diagnostics Laboratories v. Hoffman-La Roche, Inc.* (D.D.C.), for the unlawful monopolization of an enzyme used in DNA

amplification, human-genome research, and medical diagnostics; and *Griffin v. Concord EFS, Inc.* (N.D.Cal.), which alleges that member banks of a network conspired to fix fees associated with ATM transactions.

Mr. Olson is the author of *Efforts to Delay Competition from Generic Drugs: Litigation Along a Seismic Fault Between Antitrust and Intellectual Property Law*, co-authored with Joshua P. Davis, 39 U.S.F.L. Rev. 1 (2004).  He has also provided research assistance for several articles, including those of V. Schultz, *The Sanitized Workplace*, 11 Yale L.J. 2061 (2003); M. Mutua, *Savages, Victims, and Saviors: The Metaphor of Human Rights*, 42 Harv. Int'l L.J. 201 (2001); and L. Guinier, *Confirmative Action*, 25 L. & Soc. Inquiry 565 (2000).

Before joining Cohen Milstein, Mr. Olson clerked for the Honorable Barrington D. Parker, Jr. of the United States Court of Appeals for the Second Circuit, and the Honorable Vaughn R. Walker of the United States District Court for the Northern District of California.

Mr. Olson graduated from Harvard Law School, *magna cum laude* (J.D., 2001) and Vassar College with a B.A. in Philosophy (1997).

He is admitted to practice in New York.

# EXHIBIT C

# BOIES, SCHILLER & FLEXNER LLP

5301 WISCONSIN AVENUE, N.W. • WASHINGTON, D.C. 20015-2015 • PH 202 237 2727 • FAX 202 237 6131

Boies, Schiller & Flexner LLP is a national litigation firm specializing in complex litigation and national and international arbitration. The Firm has approximately 220 attorneys in offices in New York, Washington, D.C., Florida, New Jersey, New Hampshire, Nevada and California. The Firm was founded in 1997 by David Boies and Jonathan Schiller, both of whom were nationally renown antitrust and international litigators. Donald Flexner joined the Firm in 1999, bringing with him years of experience litigating antitrust actions in private practice and prosecuting antitrust violators as former Deputy Assistant Attorney General for the Antitrust Division of the United States Department of Justice. These three named partners and the other attorneys who make up the Firm are among the best litigators in the country, with decades of experience and proven track records in trying complex cases and arbitrating national and international disputes.

Boies, Schiller & Flexner's litigation practice is divided approximately equally between representing plaintiffs and representing defendants in federal and state courts throughout the United States, and in arbitrations in the United States and abroad. The Firms' clients are among the largest and most sophisticated in the world, including: AOL, Alcoa, Caithness, CBS, Credit Guardsmark, Host Marriott, Howard Milstein, Level 3, Northwest Airlines, Philip Morris, Prudential, Raytheon Engineers and Constructors, SB Corporation, Siemens Westinghouse Power Corporation, Solow Building Company, Southwestern Bell, The City of Los Angeles, The New York Yankees, Unisys, WORLDSPAN and 3Com. The Firm also represents the State of Alaska, Columbia University, Fannie Mae, the Republic of France, and the Public Broadcasting System.

Boies, Schiller & Flexner has served as lead or co-lead plaintiffs' counsel in numerous complex class actions. These class action cases have involved a variety of claims relating to such matters as antitrust and securities fraud. The Firm enjoys one of the most selective and successful class action practices in the country. Since its inception, Boies, Schiller & Flexner has negotiated record settlements and won substantial verdicts on behalf of class members in several prominent cases. In the last four years, attorneys from Boies, Schiller & Flexner took to trial and won verdicts on behalf of class members of almost $200 million post-trebling. Some of the cases in which the firm has played a leading role include:

- In 1999, the firm successfully acted as one of three co-lead counsel in recovering a billion dollars on behalf of class plaintiffs in *In re Vitamins Antitrust Litigation*, MDL 1285 (D.D.C.), which is considered to be the largest settlement of a private antitrust case in history. In 2003, the firm, acting as co-lead counsel, took the remaining four defendants to trial in D.C. federal court and won a $53 million verdict, pre-trebling.
- In 2005, the firm, after negotiating settlements totaling over $10 million, went to trial in U.S. District Court in Cleveland, winning a verdict of $11 million, pre-trebling, for class members in *In re Scrap Metal Antitrust Litigation*, (N.D. Ohio).

BOIES, SCHILLER & FLEXNER LLP

- In 2000, BSF was lead counsel in *In re Auction Houses Litigation*, (S.D.N.Y.) and negotiated a $512 million settlement on behalf of the plaintiff class, which was described by another plaintiff's counsel as "the most outstanding result I have ever heard of in the history of the antitrust laws."
- In a securities class action, Richard Drubel, one of the firm's senior partners, acted as lead counsel for the Plaintiff Class in *In re Terra-Drill Partnerships Litigation*, MDL 791, C.A. No. 11-86-3808 (S.D. Tex. 1989), which went to trial and resulted in a $72 million judgment for the Class. The National Law Journal called this verdict "one of the most significant verdicts of the year."

Boies, Schiller and Flexner has extensive experience in pharmaceutical class action matters. The firm is currently acting as co-lead counsel in *In re Oxycontin Antitrust Litigation*, C.A. No. 1:04md-01603 SHS (S.D.N.Y.) and on the lead Executive Committee in Meijer, Inc. v. Warner Chilcott, C.A. No. 05-Civ. 2195 (CKK). The firm has served as co-lead counsel in: *In re Cardizem CD Antitrust Litigation*, MDL No. 1278, C.A. Nos. 99-cv-732589 and 99-cv-73870 (E.D. Mich. 2002) ($110 million settlement): *In re Buspirone Antitrust Litigation*, MDL No. 1413, C.A. No. 01-cv-7951 (JAK) (S.D.N.Y. 2002) ($220 million settlement), and *In re Terazosin Hydrochloride Antitrust Litigation*, MDL No. 1317, C.A. No. 99-7143-Civ-Seitz (S.D. Fla.) ($75 million settlement).

Boies, Schiller & Flexner currently represents plaintiff classes of securities holders in *Rory Riggs and John Lewis v. Termeer, Genzyme Corp., et al.*, C.A. No. 03-cv-4014 (LLS) (S.D.N.Y.). Boies, Schiller & Flexner served as co-lead counsel for plaintiff shareholder classes in *In re Alcatel Alsthom Securities Litigation*, MDL No. 1263, C.A. No. 4:98-CV-320 (E.D. Tex. 2001) ($75 million settlement) and in *Lalor et al. v. Omtool, Ltd. et al.*, C.A. No. 1:99-cv-469-M, (D.N.H. 2001) ($6 million settlement).

Boies, Schiller & Flexner's ability to operate effectively as plaintiffs' counsel is reinforced by its experience representing defendants in securities class actions. Boies, Schiller & Flexner has represented major corporations, including Unisys Corporation in *In re: Unisys Corporation Securities Litigation*, C.A. No. 99-5333 (E.D. Pa.) (favorably settled class action); 3Com Corporation in *Hirsch, et al v. 3Com Corporation*, CV764977 (Cal. Superior Court (Santa Clara Co.)) (class action dismissed on summary judgment); Qwest in *In re Quest Communications International, Inc. Securities Litigation*, CV No. 01-RB-1451 (PAC) (D. Co.) (currently in pre-trial proceedings); and WebMD in *In re Initial Public Offering Securities Litigation*, C.A. No. 21 MC 92(SAS) (S.D.N.Y.) (consolidated cases currently in pre-trial proceedings).

# BOIES, SCHILLER & FLEXNER LLP

5301 WISCONSIN AVENUE, N.W. • WASHINGTON D.C. 20015-2015 • PH 202.237.2727 • FAX 202.237.6131

**David Boies**
**Chairman**
Armonk, NY
914 749 8200
*DBOIES@BSFLLP.COM*

David Boies is Chairman of the law firm of Boies, Schiller and Flexner LLP with offices in New York, Washington, D.C., California, Florida, Nevada, New Hampshire, and New Jersey. Mr. Boies attended college at the University of Redlands and law school at Northwestern and Yale. He received a B.S. degree from Northwestern in 1964, his LL.B. magna cum laude from Yale in 1966, and his LL.M. from New York University in 1967.

Mr. Boies served as Chief Counsel and Staff Director of the United States Senate Antitrust Subcommittee in 1978 and Chief Counsel and Staff Director of the United States Senate Judiciary Committee in 1979. In 1991-1993 Mr. Boies was counsel to the Federal Deposit Insurance Corporation in its litigation to recover losses for failed savings and loan associations, and in 1998-2000 Mr. Boies served as Special Trial Counsel for the United States Department of Justice in its antitrust suit against Microsoft. Mr. Boies also served as the lead counsel for former Vice-President Al Gore in connection with litigation relating to the 2000 election Florida vote count.

Among his current and recent work, Mr. Boies is lead counsel in defense of Maurice R. ("Hank") Greenberg, former Chairman and Chief Executive Officer of American International Group Inc., and the C.V. Starr companies in connection with criminal, civil and regulatory proceedings concerning the insurance industry. He obtained a favorable verdict as lead trial counsel on behalf of Lloyd's of London and other insurers in a trial involving the availability of insurance relating to the World Trade Center attacks. He currently represents an agency of the State of Alaska in a lawsuit recently initiated alleging that BP and ExxonMobil are conspiring to withhold natural gas from United States markets in an effort to artificially inflate natural gas prices and to control Alaskan gas fields. Mr. Boies is also representing American Express in an antitrust action against Visa, MasterCard, and several of their member banks seeking damages for anti-competitive practices that were declared unlawful in a suit brought by the United States Department of Justice.

Mr. Boies is the author of numerous publications including Courting Justice, published by Miramax in 2004 and Public Control of Business, published by Little Brown in 1977. Mr. Boies has taught courses at New York University Law School and Cardozo Law School.

BOIES, SCHILLER & FLEXNER LLP

Mr. Boies is the recipient of an LL.D. from the University of Redlands, the Milton Gould Award for Outstanding Oral Advocacy, the Lifetime Achievement Award from the LD Access Foundation, the Outstanding Learning Disabled Achievers Award from the Lab School of Washington, the Pinnacle Award of the International Dyslexia Association, and the William Brennan Award from the University of Virginia. He has been named "Lawyer of the Year," by the National Law Journal, runner-up "Person of the Year," by Time Magazine, and "Commercial Litigator of the Year" by Who's Who. When Mr. Boies received the Milton Gould Award in 1996 the citation said in part, "No lawyer in America has tried and argued on appeal as many landmark cases in as many different areas as Mr. Boies".

Mr. Boies' clients include George Steinbrenner and the New York Yankees, Mike Wallace and CBS, Don Imus, Maurice R. "Hank" Greenberg and Starr International Company, Ernst & Young, DuPont, Tyco, Philip Morris, Altria, American Express, and Texas Instruments.

Mr. Boies is a member of Phi Beta Kappa, and a fellow of the American College of Trial Lawyers, a fellow of the International Academy of Trial Lawyers.

# BOIES, SCHILLER & FLEXNER LLP

5301 WISCONSIN AVENUE, N.W. • WASHINGTON, D.C. 20015-2015 • PH 202 237 2727 • FAX 202 237 6 3

**William A.
Isaacson**
Partner
Washington DC
202 237 5607
wisaacson@bsfllp.com

William A. Isaacson is a partner in the Washington, DC office of Boies, Schiller & Flexner LLP.  Since joining Boies & Schiller at its inception in 1997, his main practice areas have included complex commercial litigation and class actions, and arbitration.

William A. Isaacson is a graduate of the University of Redlands and the University of Virginia School of Law where he was an editor for the University of Virginia Law Review, and received the honor of Order of the Coif and the Margaret G. Hyde Award.  He is a former law clerk for Chief Judge Harrison L. Winter of the United States Court of Appeals for the Fourth Circuit. He is admitted to practice in the District of Columbia.

In recent years, Mr. Isaacson has acted as trial counsel for the class plaintiffs in *Animal Science Products v. Mitsui & Co.* (D.D.C.), a three week jury trial of price fixing and market allocation claims in an international cartel case resulting in a jury verdict for the class of  $49.5 million (before trebling). (National Law Journal, August 4, 2003 p. 13)  IN 2006, he also acted as lead trial counsel in *In re Scrap Metal Antitrust Litigation* (N.D. Ohio), another multi-week trial of price fixing and market allocation claims, resulting in an $11.5 million pre-trebling verdict.  Mr. Isaacson also has acted as a Steering Committee Member in *In re Vitamins Antitrust Litigation* in which the firm represented purchasers of a range of vitamins in pursuing price fixing and market allocation claims ("Not Your Father's Class Action," National Law Journal, June 7, 1999, p.A5), resulting in an over $1 billion in settlements.

 In addition, Mr. Isaacson has filed the first class actions uncovering cartels in the vitamin C industry in China and among magnesite producers in China.  He has acted as lead counsel in *In Re First Databank Antitrust Litigation*, 205 F.R.D. 408, 411 (D.D.C. 2002) (approving $24 million settlement) and other class actions.

In the field of arbitration. Mr. Isaacson has acted as lead counsel in proceedings in the Southern District of Texas and the Fifth Circuit to enforce an international arbitration award under the New York Convention resulting in a $261 million judgment which was affirmed on appeal. *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274 (5th Cir. 2004); American Lawyer, 2005 Arbitration Scorecard,

BOIES, SCHILLER & FLEXNER LLP

Mr. Isaacson also acted as lead trial counsel for Claimant
Homestore v. AOL (AAA Arbitration/Washington D.C.) asserting
claims for breach of contract arising out of an internet distribution
agreement.  Following a two week trial in 2002 and before a final
award, the parties entered a settlement agreement restructuring the
distribution agreement and terminating a $57 million payment due
from Homestore and reducing future payments by $9 million per
quarter. (Fair Disclosure Wire, January 9, 2003).  Mr. Isaacson has
acted as trial counsel for Respondent in Marketing Company v.
Telecommunications Company (AAA arbitration/ New York) in
which Claimant was denied its request for $30 million in lost
profits and other damages against Respondent arising out of a joint
marketing agreement for residential long distance services.

With Boies, Schiller & Flexner, Mr. Isaacson also has acted as
counsel in Worldspan v. Abacus (ICC Arbitration / London)
(following a three week trial in 1999, a 300 page Award in August
2000 found for Claimant Worldspan on claims for fraud, breach of
fiduciary duty, breach of contract, misappropriation of confidential
information and conspiracy and awarded $39.5 million); Kuwait
Oil Company & UK Oil Company v. UK Oil Company et
al. (LCIA Arbitration/London) (following an arbitration in London
and Kuwait, an arbitration award in December 2000 found in favor
of Claimants on contract and tort claims, affirmed Claimant's
contractual right to its equity interest in any bid on the billion
barrel oil fields at issue, and awarded fees and costs to Claimants);
Shandling v. Grey (representing comedian Garry Shandling against
his former manager for breach of fiduciary duty through to
settlement following a decision denying a motion for summary
adjudication, see "Shandling Claims Get New Life in a Stunning
Reversal," Variety June 23, 1999, p. 1); PBS v. Nesmith
(represented Public Television in successfully reducing $50 million
jury verdict in favor of Michael Nesmith, see National Law
Journal, April 19, 1999, p.B1).

Mr. Isaacson's publications include "Antifederalism Revisited," 21
University of Toledo Law Review 147.  Mr. Isaacson is a former
member of the Advisory Board of the AARP National Litigation
Project and has lectured at Georgetown University Law School and
ABA seminars.

While at the University of Redlands, he was a national finalist at
the 1982 National Debate Tournament.

# BOIES, SCHILLER & FLEXNER LLP

5301 WISCONSIN AVENUE. N.W. • WASHINGTON. D.C. 2001 5-2015 • PH 202 237 2727 • FAX 202 237 6I3

**Richard B. Drubel**
Partner
Hanover NH
603 643 9090
*rdrubel@bsfllp.com*

Richard Drubel is a partner in the firm's Hanover, NH office. His main practice areas include business litigation, antitrust, securities fraud, consumer litigation, environmental litigation and class actions.

Since becoming a partner at Boies, Schiller & Flexner LLP in 1998, Mr. Drubel has served as lead counsel in a number of complex class actions. He was lead counsel with David Boies in a major antitrust class action against Christie's and Sotheby's auction houses that resulted in a $512 million settlement in 2001. He also represented the plaintiffs in a RICO case against a global pharmaceutical company that resulted in a $30 million settlement for the plaintiffs. Mr. Drubel is currently co-lead counsel in class actions against several drug companies for antitrust violations arising out of blocking generic entry and against major insurers for violations of ERISA and RICO in connection with their healthcare coverage. He has successfully represented opt-out plaintiffs in a tort case arising out of radiation experiments on hospital patients in Ohio. Mr. Drubel has extensive defense experience. In 1999, he defended a leading technology corporation on fraud charges and is currently representing defendants in antitrust and securities fraud lawsuits.

From 1988-1998, Mr. Drubel was a partner in the law firm of Susman Godfrey LLP in Houston, where he specialized in commercial litigation, including class actions. While at Susman Godfrey, Mr. Drubel tried to $72 million jury verdict a securities fraud class action which the National Law Journal called one of the most significant verdicts of 1989. He started his legal career as Specials Assistant to the General Counsel, United States Department of Energy and also served as Special Assistant to John Temple Lang, Legal Services of the Commission of the European Communities, Antitrust Division.

Mr. Drubel received his B.A. from the University of Michigan in 1973. He graduated magna cum laude from the University of Michigan Law School in 1977, where he was Order of the Coif and editor of the Michigan Law Review 1976-1977. Mr. Drubel received his LL.M. cum laude in 1978 from the Free University of Brussels. H served as a law clerk to the Honorable Louis F. Oberdorfer, United States District Judge for the District of Columbia, from 1978-1979.

Mr. Drubel co-authored Toward a General Theory of Double Jeopardy, The Supreme Court Review, 1978. He is admitted to practice in the District of Columbia and Texas.

Office: (603) 643-9090
Office Fax: (603) 643-9010
Email: rdrubel@bsfllp.com

# RICHARD B. DRUBEL

## Cases (1986 - 2005)

1.   *In re: Terazosin Hydrochloride Antitrust Litigation,* 99-MDL-1317-Seitz/Klein, United States District Court for the Southern District of Florida; The Honorable Patricia A. Seitz (2005).

| | |
|---|---|
| Case Type: | Antitrust Pharmaceutical Case |
| Represented: | Plaintiff Class of Direct Purchasers |
| **Result:** | **$72.5 million settlement for the plaintiff class** |

2.   *In re: High Fructose Corn Syrup Antitrust Litigation*, MDL No. 1087, Master File No. 95-1477, United States District Court for the District of Illinois, Peoria Division; The Honorable Michael M. Mimm (2004).

| | |
|---|---|
| Case Type: | Antitrust Price Fixing |
| Represented: | Plaintiff Class |
| **Result:** | **$531 million settlement for the plaintiff class** |

3.   *In re: Buspirone Antitrust Litigation*, MDL No. 1413, Civil Action No. 01-CV-7951 (JAK), United States District Court for the Southern District of New York; The Honorable John G. Koeltl (2002).

| | |
|---|---|
| Case Type: | Antitrust Pharmaceutical Case |
| Represented: | Plaintiff Class of Direct Purchasers |
| **Result:** | **$220 million settlement for the plaintiff class** |

4.   *In re: Cardizem CD Antitrust Litigation*, MDL No. 1278, Civil Action Nos. 99-cv-73259 and 99-cv-73870, United States District Court for the Eastern District of Michigan, Southern Division; The Honorable Nancy G. Edmunds (2002).

| | |
|---|---|
| Case Type: | Antitrust Pharmaceutical Case |
| Represented: | Plaintiff Class of Direct Purchasers |
| **Result:** | **$110 million settlement for the plaintiff class** |

5.   ***Mark Newby et al. v. Enron Corporation et al.***, MDL No. 1446, Civil Action No. H-01-3624, United States District Court for the Southern District of Texas, Houston Division; The Honorable Melinda Harmon (2001).

    Case Type:      Securities Fraud
    Represented:   Defendant Andrew S. Fastow

6.   ***In re: Alcatel Alsthom Securities Litigation***, MDL No. 1263, Civil Action No. 4:98-CV-320, United States District Court for the Eastern District of Texas; The Honorable Paul Brown (2001).

    Case Type:      Securities Fraud
    Represented:   Plaintiff Class of Securities Holders
    **Result:**         **$75 million settlement**

7.   ***John Lalor and John Heck, et al. v. Omtool, LTD, Robert L. Voelk, Darioush Mardan, Martin A. Schultz, and Bruce R. Evans***, Civil Action No. 1:99-CV-469-M, United States District Court for the District of New Hampshire; The Honorable Steven J. McAuliffe (2001).

    Cast Type:      Securities Fraud
    Represented:   Plaintiff Class of Securities Purchasers
    **Result:**         **$6 million settlement**

8.   ***In re: Auction Houses Antitrust Litigation***, 00 Civ. 0648 (LAK), United States District Court for the Southern District of New York; The Honorable Lewis A. Kaplan (2000).

    Case Type:      Antitrust Price Fixing
    Represented:   Plaintiff Class
    **Result:**         **$512 million settlement cited by the National Law Journal as one of the largest settlements of the year 2000.**

9.   ***In re: SmithKline Beecham Clinical Laboratory Test Billing Practices Litigation,*** MDL 1210, United States District Court for the District of Connecticut; The Honorable Alfred V. Covello; ***May v. SmithKline Beecham Clinical Laboratory,*** C.A. No. 3:98-108
or 97L-1230, In The Circuit Court of Madison County, Third Judicial Circuit, State of Illinois; The Honorable Randall A. Bono (2000).

    Case Type:      ERISA, RICO and state law claims
    Represented:   Plaintiff Classes
    **Result:**         **$30 million settlement**

10. ***In re: Cincinnati Radiation Litigation***, C-1-94-126, United States District Court for the Southern District of Ohio; The Honorable Sandra S. Beckwith (1999).

| | |
|---|---|
| Case Type: | Tort arising out of radiation experiments on hospital patients |
| Represented: | Plaintiff opt-outs |
| **Result:** | **$1.8 million settlement** |

11. ***Ceska Sporitelna v. Unisys Corporation,*** 96-CV-4152, United States District Court for the Eastern District of Pennsylvania; The Honorable Charles R. Weiner (1999).

| | |
|---|---|
| Case Type: | Securities Fraud |
| Represented: | Defendant Unisys Corporation |
| **Results:** | **Confidential settlement** |

12. ***County of Orange vs. AgAmerica, FCB, et al.***, U.S. Bankruptcy Court, C.D. Ca., Case No. SA 94-22272 JR; The United States District Court, Central District of California, Southern Division; The Honorable Gary L. Taylor (1999).

| | |
|---|---|
| Case Type: | Securities Fraud |
| Represented: | Defendants Farm Credit Banks |
| **Results:** | **Settlement and dismissal with $0 paid by clients** |

13. ***Rosalina Quiroga, Individually and as Next Friend of Martin Quiroga, Daniel Quiroga, and Martin Quiroga, Jr. v. Sunbelt Regional Medical Center d/b/a Columbia East Houston Medical Center (f/k/a Sunbelt Regional Medical Center), et al.***, No. 98-14707; In the District Court, Harris County, Texas, 125th Judicial District Court; The Honorable Harvey G. Brown, Jr. (1999).

| | |
|---|---|
| Case Type: | Medical Malpractice |
| Represented: | Plaintiff |
| **Results:** | **$1.635 million settlement after 6 day jury trial** |

14. ***Gene Cyre v. Georgia-Pacific Corporation, et al,*** No. 97-24399; In the District Court of Harris County, Texas; The Honorable Russell Lloyd (1997).

| | |
|---|---|
| Case Type: | Toxic Tort |
| Represented: | Defendant, Georgia-Pacific Corporation |
| **Result:** | **Non-suit in favor of Georgia-Pacific Corporation** |

15. ***Farm Credit Bank of Texas v. Kemper Securities, Inc. and PaineWebber Incorporated, NationsBank Capital Markets***, No. 95-E153069; In the District Court of Jefferson County, Texas; The Honorable Donald J. Floyd (1996).

| | |
|---|---|
| Case Type: | Securities Fraud |
| Represented: | Plaintiff Farm Credit Bank |
| **Result:** | **Kemper: $1.90 million settlement** |
| | **PaineWebber: $365,000 settlement** |
| | **NationsBank: defense decision in arbitration** |

16. ***Judith Rubinstein and Howard Greenwald v. J. Patrick Collins, et al.***, Civil Action No. H-92-1297; In the United States District Court for the Southern District of Texas, Houston Division; The Honorable Nancy Atlas (1996).

| | |
|---|---|
| Case Type: | Securities Fraud |
| Represented: | Plaintiff Class |
| **Result:** | **$6.25 million settlement** |

17. ***Edwin C. Crouch, et. al. v. Cornelius B. Prior, Jr., et. al.***, Civil Action No. 1995/108-F-STX; In the District Court of the Virgin Islands, Division of St. Croix; The Honorable Raymond J. Finch and ***Atlantic Tele-Network, Inc. and Cornelius B. Prior, Jr. v. Jeffrey J. Prosser, Sir Shridath s. Ramphal, and John P. Raynor***, Civil Action No. 14443; In the Court of Chancery of the State of Delaware in and for New Castle County; The Honorable Myron T. Steele (1995-1996).

| | |
|---|---|
| Case Type: | Proxy Fight |
| Represented: | Jeffrey J. Prosser, Chairman of Atlantic Tele-Network, Inc. |
| **Result:** | Settlement reinstating client as Chairman of the Board of Directors. |

18. ***Brian D. Backstrom, et al. v. The Methodist Hospital***; Civil Action No. H-94-1877; In the United States District Court for the Southern District of Texas, Houston Division; The Honorable Sim Lake (1995-1996).

| | |
|---|---|
| Case Type: | Product Liability |
| Represented: | The Methodist Hospital |
| **Result:** | Class Action settlement extremely favorable to client. |

19.    ***In re Taxable Municipal Bond Securities Litigation***, MDL 863, United States
       District Court for the Eastern District of Louisiana; The Honorable Morey Sear,
       Chief Judge (1995).

       | | |
       |---|---|
       | Case Type: | Securities Fraud |
       | Represented: | Plaintiff Class |
       | **Result:** | **$124 million settlements** |

20.    ***In re The Drexel Burnham Lambert Group, Inc.***, 90 Civ. 6954 (MP) and ***In re
       Michael Milken Securities Litigation***, MDL 924, United States District Court for
       the Southern District of New York; The Honorable Milton Pollack (1993-1995).

       | | |
       |---|---|
       | Case Type: | Securities Fraud |
       | Represented: | Selected by The Honorable Milton Pollack to serve as one of five attorneys to administer **over $475 million** in Drexel and Michael Milken recoveries. |

21.    ***Belman v. Sanifill, Inc.***, Civil Action No. H-91-3767, United States District Court
       for the Southern District of Texas; The Honorable Ken Hoyt (1993).

       | | |
       |---|---|
       | Case Type: | Securities Fraud |
       | Represented: | Plaintiff Class |
       | **Result:** | **$3.3 million settlement** |

22.    ***Marine Drilling Management Company v. Bethlehem Steel Corporation***, No.
       91-3598-C, Nueces County District Court (Corpus Christi), Texas; The Honorable
       Vernon Harville (1993).

       | | |
       |---|---|
       | Case Type: | Breach of Contract, Fraud |
       | Represented: | Plaintiff |
       | **Result:** | **$10 million settlement** |

23. ***Diamond v. Chamberlain, Hrdlicka, White, Johnson & Williams***, 89-24204, 165th Judicial District, Harris County, Texas; The Honorable Elizabeth Ray (1993).

   | | |
   |---|---|
   | Case Type: | Legal Malpractice |
   | Represented: | Defendant |
   | **Result:** | **$1 million settlement** |

24. ***Sunrise Systems, Inc. v. Xerox Corporation***, No. 3:88-CV-0617-X, United States District Court for the Northern District of Texas (Dallas); The Honorable Joe Kendall (1992).

   | | |
   |---|---|
   | Case Type: | Breach of Contract |
   | Represented: | Plaintiff in 3-week jury trial |
   | **Result:** | **Jury verdict for plaintiff: $23.3 million judgment** (Settled for $21 million while on appeal.) |

25. ***The Dow Chemical Company v. Liberty Oil and Refining Association, Inc.***, No. A 199968 II D, Clark County (Las Vegas), Nevada; The Honorable Nancy Becker (1991).

   | | |
   |---|---|
   | Case Type: | Breach of Contract |
   | Represented: | Defendant Dow Chemical |
   | **Result:** | **Settlement of less than $1 million** |

26. ***In re Terra-Drill Partnerships Securities Litigation***, MDL 791, C.A. No. H-86-3808, United States District Court for the Southern District of Texas (Houston); The Honorable Lynn Hughes and The Honorable Milton Pollack (1989).

   | | |
   |---|---|
   | Case Type: | Securities Fraud |
   | Represented: | Plaintiff Class in 3-week jury trial |
   | **Result:** | **Jury verdict for plaintiffs: $72 million judgment called "one of the most significant verdicts of the year" by the *National Law Journal*** |

27. ***Friedman Holdings, Inc. and Friedman Acquisition Corporation v. Friedman Industries, et al.***, No. 88-012513, 333rd District Court, Harris County (Houston), Texas; The Honorable Dave Lee Wilson (1989).

   | | |
   |---|---|
   | Case Type: | Breach of Contract |
   | Represented: | Plaintiffs |
   | **Result:** | **$800,000 settlement** |

28. ***The Republic of the Philippines v. Ferdinand Marcos, et al.***, C.A. No. H-86-1184, United States District Court for the Southern District of Texas (Houston); The Honorable John Singleton (1987).

   | | |
   |---|---|
   | Case Type: | RICO, Fraud |
   | Represented: | Campos Defendants |
   | **Result:** | **Settlement** |

29. ***Arkansas Gazette Co. v. Camden News Publishing Co., et al.***, LR-C-84-1020, United States District Court for the Eastern District of Arkansas (Little Rock); The Honorable William R. Overton (1986).

   | | |
   |---|---|
   | Case Type: | Antitrust Predatory Pricing |
   | Represented: | Plaintiff in a 10-day jury trial |
   | **Result:** | **Verdict for defendant** |

30. ***In re Invoil Securities Litigation***, MDL No. 585, United States District Court for the Western District of Oklahoma (Oklahoma City); The Honorable Luther Eubanks (1986).

   | | |
   |---|---|
   | Case Type: | Securities Fraud |
   | Represented: | Plaintiff Class |
   | **Result:** | **Settlement at commencement of trial** |

# BOIES, SCHILLER & FLEXNER LLP

5301 WISCONSIN AVENUE, N.W. • WASHINGTON, D.C. 20015-2015 • PH 202 237 2727 • FAX 202 237 6i3

**Tanya S. Chutkan**
**Partner**
Washington, DC
202 237 6239
*TCHUTKAN@BSFLLP.COM*

Tanya Chutkan, resident in the firm's Washington, D.C. office, specializes in litigation and white collar defense.

Tanya graduated from the University of Pennsylvania School of Law in 1987, where she was an associate editor of the Law Review and an Arthur Littleton Legal Writing Instructor. She received her Bachelor of Arts Degree in Economics from George Washington University in 1983. Prior to joining the firm in 2002, Tanya was a trial attorney and supervisor with the D.C. Public Defender Service, where she tried over 50 jury trials, including numerous serious felony cases and complex white collar matters, and argued several appellate cases. She tried and won acquittal in the first blackmail case to go to trial in the District of Columbia and also won the first known acquittal in the District of Columbia against DNA evidence.

Her recent cases include the trial of two federal antitrust class actions on behalf of plaintiff classes, *In re Vitamins Antitrust Litigation* (D.D.C. 2003), which resulted in an award of $149.5 million, and *In re Scrap Metal Antitrust Litigation* (N.D. Ohio 2006), which resulted in an award of $34.5 million. Currently, she represents plaintiff classes in three pending class actions in federal courts in Pennsylvania, the District of Columbia, and New York, and is representing a multinational corporation in a Department of Justice grand jury investigation. She has also defended individuals as well as corporations in SEC and Department of Justice investigations and in securities and antitrust litigation.

# EXHIBIT D

Exhibit 1
Page 1 of 13



ONE

## Dr. JEFFREY J. LEITZINGER
*President*
**Los Angeles, California**
**Tel: 213 624 9600**


### EDUCATION

Ph.D., Economics, University of California, Los Angeles
M.A., Economics, University of California, Los Angeles
B.S., Economics, Santa Clara University


### WORK EXPERIENCE

*Econ One Research, Inc.*, President, July 1997 to date
Founded *Econ One Research, Inc.*, 1997

*Micronomics, Inc.*, President and CEO, 1994-1997
*Micronomics, Inc.*, Executive Vice President, 1988-1994
Cofounded *Micronomics, Inc.*, 1988

*National Economic Research Associates, Inc.* 1980-1988
(Last position was Senior Vice President and member of the Board of
Directors)


### ADMITTED AS AN EXPERT ECONOMIST TO TESTIFY ABOUT:

*Relevant Markets and Competition*

Before:    Federal Energy Regulatory Commission
Superior Court, State of Alaska
Superior Court, State of California
Superior Court, State of Washington
U.S. District Court, Central District of California
U.S. District Court, Northern District of California
U.S. District Court, District of Colorado
U.S. District Court, Eastern District of Missouri
U.S. District Court, Eastern District of Texas
U.S. District Court, Western District of Texas
U.S. District Court, District of Wyoming

*Valuation, Economic Loss and Damages*

Before:    Circuit Court, Mobile County, Alabama
Civil Court, Harris County, Texas
Civil Court, Midland County, Texas
State of Alaska Department of Revenue
Superior Court, State of California

Dr. Jeffrey J. Leitzinger
*President*

Exhibit 1
Page 2 of 13

U.S. Bankruptcy Court, District of Alaska
U.S. Bankruptcy Court, Northern District of Texas
U.S. District Court, State of Alabama
U.S. District Court, Central District of California
U.S. District Court, District of Colorado
U.S. District Court, State of Louisiana
U.S. District Court, Southern District of Mississippi
U.S. District Court, District of North Dakota
U.S. District Court, Eastern District of Texas
U.S. District Court, Southern District of Texas
U.S. District Court, Western District of Texas

*Patent and Intellectual Property Issues*

Before:       Superior Court, State of Washington
              U.S. District Court, Northern District of California
              U.S. District Court, District of Colorado
              U.S. District Court, District of Connecticut
              U.S. District Court, Southern District of Texas

*The Economics of Regulated Industries*

Before:       Alaska Public Utilities Commission
              California Energy Commission
              California Public Utilities Commission
              Federal Energy Regulatory Commission
              Nevada Public Service Commission
              Wisconsin Public Service Commission
              U.S. District Court, Northern District of Oklahoma
              U.S. District Court, Northern District of Texas

**INVITED PRESENTATIONS REGARDING:**

What Can an Economist Say About The Presence of Conspiracy? *American Bar Association,* Section of Antitrust Law, The Antitrust Litigation Course, October 2003.

Lessons From Gas Deregulation, *International Association for Energy Economics, Houston Chapter,* December 2002.

A Retrospective Look at Wholesale Gas Industry Restructuring, *Center for Research in Regulated Industries,* 20th Annual Conference of the Advanced Workshop in Regulation and Competition, May 2001.

The Economic Analysis of Intellectual Property Damages, *American Conference Institute,* Sixth National Advanced Forum, January 2001.

Law and Economics of Predatory Pricing Under Federal and State Law, *Golden State Antitrust and Unfair Competition Law Institute,* 8th Annual Meeting, October 2000.

Dr. Jeffrey J. Leitzinger
*President*

Exhibit 1
Page 3 of 13

Non-Price Predation--Some New Thinking About Exclusionary Behavior, *Houston Bar Association*, Antitrust and Trade Regulation Section, October 2000.

After the Guilty Plea: Does the Defendant Pay the Price in the Civil Damage Action (expert witness in mock trial presentation), *American Bar Association*, Section of Antitrust Law, 48th Annual Spring Meeting, April 2000.

Economics of Restructuring in Gas Distribution, *Center for Research in Regulated Industries*, 12th Annual Western Conference, July 1999.

A Basic Speed Law for the Information Superhighway, *California State Bar Association*, December 1998.

Innovation in Regulation: Section Discussant, *Center for Research in Regulated Industries*, 11th Annual Western Conference, July/September 1998.

Electric Industry Deregulation: What Does The Future Hold? *Los Angeles Headquarters Association*, November 1996

Why Deregulate Electric Utilities?, *National Association of Regulatory Utility Commissioners*, November 1995.

Restructuring U.S. Power Markets: What Can the Gas Industry's Experience Tell Us?, *National Association of Regulatory Utility Commissioners*, July 1995.

Natural Gas Restructuring: Lessons for Electric Utilities and Regulators, *International Association for Energy Economics*, Los Angeles, California, May 1995.

Techniques in the Direct and Cross-Examination of Economic, Financial and Damage Experts, *The Antitrust and Trade Regulation Law Section of the State Bar of California and The Los Angeles County Bar Association*, 2ND Annual Golden State Antitrust and Trade Regulation Institute, Los Angeles, California October 1994

Demonstration: Deposition of Expert Witnesses and Using Legal Technology, *National Association of Attorneys General*, 1994 Antitrust Training Seminar, Santa Fe, New Mexico, September 1994.

Direct and Cross Examination of Financial, Economic, and Damage Experts, *The State Bar of California, Antitrust and Trade Regulation Law Section*, San Francisco, California, May 1994.

Price Premiums in Gas Purchase Contracts, *International Association for Energy Economics*, Seattle, Washington, October 1992.

Valuing Water Supply Reliability, *Western Economic Association*. Natural Resources Section, San Francisco, California, July 1992.

Transportation Services After Order 636: "Back to the Future" for Natural Gas, Seminar sponsored by Jones, Day, Reavis & Pogue, Dallas, Texas, May 1992.

The Cost of An Unreliable Water Supply for Southern California, Forum presented by Micronomics, Inc., Los Angeles, California, May 1991

Market Definition: It's Time for Some "New Learning," *Los Angeles County Bar Association*, Antitrust and Corporate, Law Section, Los Angeles, California, December 1989.

Market Definition in Antitrust Cases: Some New Thinking, *Oregon State Bar*, Antitrust Law Section, Portland, Oregon, March 1987.

Future Directions for Antitrust Activity in the Natural Gas Industry, *International Association of Energy Economists*; Houston, Texas, February 1987.

Information Externalities in Oil and Gas Leasing, Western Economic Association Meetings, Natural Resources Section, Seattle, Washington, July 1983.

Economic Analysis of Offshore Oil and Gas Leasing, *Western States Land Commissioners Association*; South Padre Island, Texas, December 1982.

## PUBLISHED ARTICLES

"A Retrospective Look at Wholesale Gas: Industry Restructuring," *Journal of Regulatory Economics,* January 2002.

"Balance Needed in Operating Agreements as Industry's Center of Gravity Shifts to State Oil Firms," *Oil & Gas Journal*, October 2000.

"What Can We Expect From Restructuring In Natural Gas Distribution?" *Energy Law Journal*, January 2000.

"Gas Experience Can Steer Power Away from Deregulation Snags," *Oil & Gas Journal*, August 1996.

"Anatomy of FERC Order 636: What's out, What's in," *Oil & Gas Journal*, June 1992.

"Antitrust II – Future Direction for Antitrust in the Natural Gas Industry," *Natural Gas*, November 1987

"Information Externalities in Oil and Gas Leasing," *Contemporary Policy Issues*, March 1984.

Dr. Jeffrey J. Leitzinger
*President*

Exhibit 1
Page 5 of 13

"Regression Analysis in Antitrust Cases Opening the Black Box." *Philadelphia Lawyer*, July 1983.

"Foreign Competition in Antitrust Law," *The Journal of Law & Economics*, April 1983.

## REGULATORY SUBMISSIONS

In the Matter of the Application of Southern California Gas Company Regarding Year Six (1999-2000) Under its Experimental Gas Cost Incentive Mechanism and Related Gas Supply Matters; A 00-06-023, Public Utilities Commission of the State of California, November 2001.

Sempra Energy and KN Energy, Incorporation; Docket No. EC99-48-000 (Affidavit and Verified Statement), Federal Energy Regulatory Commission, March/May 1999.

Rulemaking on the Commission's Own Motion to Assess and Revise the Regulatory Structure Governing California's Natural Gas Industry (Market Conditions Report), Public Utilities Commission of the State of California, July 1998.

In the Matter of the Application of Pacific Enterprises, Enova Corporation, et al. for Approval of a Plan of Merger Application No. A. 96-10-038, Public Utilities Commission of the State of California, August/October 1997.

In re: Koch Gateway Pipeline Company; Docket No. RP 97-373-000, Federal Energy Regulatory Commission, May/October 1997 and February 1998.

In the Matter of the Application of Sadlerochit Pipeline Company for a Certificate of Public Convenience and Necessity; Docket No P-96-4, Alaska Public Utilities Commission, May 1996.

Public Funding of Electric Industry Research, Development and Demonstration (RD&D) Under Partial Deregulation, California Energy Commission, January 1995.

NorAm Gas Transmission Company; Docket No. RP94-343-000, Federal Energy Regulatory Commission, August 1994/June 1995.

Natural Gas Vehicle Program; Investigation No. 919-10-029, California Public Utilities Commission, July 1994.

Transcontinental Gas Pipe Line Corporation, Docket No. RP93-136-000 (Proposed Firm-to-the-Wellhead Rate Design), Federal Energy Regulatory Commission, January 1994.

Dr. Jeffrey J. Leitzinger
*President*

Exhibit 1
Page 6 of 13

In re: Sierra Pacific's Proposed Nomination for Service on Tuscarora Gas Pipeline; Docket No. 93-2035, The Public Service Commission of Nevada, July 1993.

Employment Gains in Louisiana from Entergy-Gulf States Utilities Merger, Louisiana Public Utilities Commission, December 1992.

Employment Gains to the Beaumont Area from Entergy-Gulf States Utilities Merger, Texas Public Utilities Commission, August 1992.

Transcontinental Gas Pipe Line Corporation; Docket No. RS 92-86-000 (Affidavit regarding Transco's Proposed IPS Service), Federal Energy Regulatory Commission, June 1992.

In Re: Pipeline Service Obligations; Docket No. RM91-11-000; Revisions to Regulations Governing Self-Implementing Transportation Under Part 284 of the Commission's Regulations; Docket No. RM91-3-000; Revisions to the Purchased Gas Adjustment Regulations; Docket No. RM90-15-000, Federal Energy Regulatory Commission, May 1991.

In the Matter of Natural Gas Pipeline Company of America; Docket No. CP89-1281 (Gas Inventory Charge Proposal), Federal Energy Regulatory Commission, January 1990.

In the Matter of United Gas Pipeline Company, UniSouth, Cypress Pipeline Company; Docket No. CP89-2114-000 (Proposed Certificate of Storage Abandonment by United Gas Pipeline Company), Federal Energy Regulatory Commission, December 1989.

In the Matter of Tennessee Gas Pipeline Company, Docket No. CP89-470 (Gas Inventory Charge Proposal), Federal Energy Regulatory Commission, July 1989.

In the Matter of Take-Or-Pay Allocation Proposed by Mississippi River Transmission Corporation, Federal Energy Regulatory Commission, March 1988.

In the Matter of Natural Gas Pipeline Company of America; Docket No. RP87-141-000 (Gas Inventory Charge Proposal), Federal Energy Regulatory Commission, December 1987.

In the Matter of Application of Wisconsin Gas Company for Authority to Construct New Pipeline Facilities; 6650-CG-104, Public Service Commission, State of Wisconsin, August 1987.

Trans-Alaska Pipeline System; Docket Nos. OR 78-1-014 and OR 78-1-016 (Phase 1 Remand), Federal Energy Regulatory Commission, October 1983.

Exhibit 1
7 of 13
Econ One Research, Inc.
Los Angeles, California

**DR. JEFFREY J. LEITZINGER**
*Prior Testimony*
**June 2002 – May 2006**

| | Proceeding | Court/Commission/Agency | Docket or File | Deposition/Trial/Hearing | Date |
|---|---|---|---|---|---|
| 1. | Lowe, Alakayak, et al. v. All Alaskan Seafoods Inc., et al | Superior Court for the State of Alaska, Third Judicial District | 3AN-9S-4676 Civil | Deposition Trial | November 1998 March 2003 May 2003 |
| 2. | Ronald Cleveland d/b/a Lone Star Videotronics, Ruben Loredo d/b/a Five Palms Video, et al. vs. Viacom Inc., Blockbuster, Inc., Paramount Home Video, Inc., Buena Vista Home Entertainment, Inc., et al | U.S. District Court for the Western District of Texas, San Antonio Division | Civil Action SA-99-CA-783-EP | Deposition Trial | October 2001 May 2002 June 2002 |
| 3. | In Re: Terazosin Hydrochloride Antitrust Litigation | U.S. District Court, Southern District of Florida | Case Nos. 98-3125 and 99-7134 | Deposition | January 2002 July 2002 February 2004 |
| 4. | Frederick L. Sample, et al. v. Monsanto Company et al | U.S. District Court, Eastern District of Missouri | Case No. 4:01cv65RWS | Deposition Hearing | July 2002 January 2003 April 2003 |
| 5. | Toronto Dominion (Texas) Inc. et al. v. PricewaterhouseCoopers LLP | State Court of Fulton County, State of Georgia | No. C0VS012679-F | Deposition | July 2002 |

Exhibit 1
8 of 13
Econ One Research, Inc.
Los Angeles, California

DR. JEFFREY J. LEITZINGER
*Prior Testimony*
June 2002 – May 2006

| | Proceeding | Court/Commission/Agency | Docket or File | Deposition/ Trial/Hearing | Date |
|---|---|---|---|---|---|
| 6. | Elliott Industries Limited Partnership v. Conoco Inc. Amoco Production Company and Amoco Energy Trading Corporation | U.S. District Court, District of New Mexico | Cause No. CIV-00-655-JC-WWD-ACE | Deposition | July 2002 |
| 7. | Duramed Pharmaceuticals, Inc. v. Wyeth-Ayerst Laboratories Inc. | U.S. District Court, Southern District of Ohio | No. C-1-00-735 | Deposition | August 2002 |
| 9. | Computer Access Technology Corporation v. Catalyst Enterprises, Inc. | U.S. District Court, Northern District of California, Oakland Division | No. C 00-4852 DLJ | Deposition Trial | September 2002 November 2002 |
| 10. | ISPTel, Inc. v. Lucent Technologies, Inc. | U.S. District Court, Northern District of California, Oakland Division | No. C 01-1390 CW (ARB) | Deposition | November 2002 |
| 11. | Synopsys, Inc. v. Nassda Corporation | U.S. District Court, Northern District of California, San Francisco Division | No. C-01-2519-SI | Deposition | November 2002 |

Exhibit 1
9 of 13
Econ One Research, Inc.
Los Angeles, California

**DR. JEFFREY J. LEITZINGER**
*Prior Testimony*
June 2002 – May 2006

| | Proceeding | Court/Commission/Agency | Docket or File | Deposition/ Trial/Hearing | Date |
|---|---|---|---|---|---|
| 12 | The Goeken Group Corporation and In-Flight Phone Corporation v. McCaw Cellular Communications, Inc., Claircom Communications, L.P. and Hughes Network Systems, Inc. | The Circuit Court of DuPage County, Illinois Eighteenth Judicial District | No. 93 CH 1065 | Deposition | June 2003 |
| 13. | In Re Ciprofloxacin Hydrochloride Antitrust Litigation | U.S. District Court, Eastern District of New York | No. 1:00-MD-1383 | Deposition | July 2003 May 2004 |
| 14. | In Re Scrap Metal Antitrust Litigation | U.S. District Court, Northern District of Ohio, Eastern Division | No. 1:02 CV 0844 | Deposition Trial | August 2003 September 2004 January 2005 |
| 15. | KLA-Tencor Corporation v. Tokyo Seimitsu Co., Ltd., and TSK America, Inc. | U.S. District Court, Northern District of California, Oakland Division | No. CV01-2489 SBA | Deposition | August 2003 |
| 16. | In Re Relafen Antitrust Litigation | U.S. District Court, District of Massachusetts | No. 01-CV-12239 (WGY) | Deposition | September 2003 December 2003 |

Exhibit 1
10 of 13
Econ One Research, Inc.
Los Angeles, California

**DR. JEFFREY J. LEITZINGER**
*Prior Testimony*
June 2002 – May 2006

| | Proceeding | Court/Commission/Agency | Docket or File | Deposition/ Trial/Hearing | Date |
|---|---|---|---|---|---|
| 17. | Francis Ferko and Russell Vaughn as Shareholders of Speedway Motorsports, Inc. v. National Association of Stock Car Auto Racing, Inc., International Speedway Corporation, and Speedway Motorsports, Inc. | U.S. District Court, Eastern District of Texas, Sherman Division | No. 4 02-CV-50 | Deposition | November 2003 |
| 18. | Chevron U.S.A. Inc. v. State of Louisiana, Louisiana State Mineral Board, and Louisiana Department of Natural Resources | U.S. District Court, 17th Judicial District, Parish of Lafourche, Louisiana | Number 93 658 Division C | Deposition Trial | January 2004 March 2004 |
| 19. | Houston McLane Company Inc. and Houston Regional Sports Network, L.P. v. Affiliated Regional Communications, Ltd. d/b/a/ Fox Sports Southwest | U.S. District Court, 333rd Judicial District, Harris County Texas | Cause No. 2003-10943 | Deposition | March 2004 |
| 20. | Harry E. Steiser, Dale E. Nelson and Michael deMontbrun v. TAP Pharmaceutical Products, Inc. et al | State of North Carolina New Hanover County In The General Court of Justice Superior Court Division | File No. 01CVS 5268 | Deposition | April 2004 |
| 21. | Masimo Corporation vs Tyco Health Care Group L.P. and Mallinckrodt Incorporated | U.S. District Court, Central District of California, Western Division | Case No. CV-02-4770 | Deposition Trial | April 2004 March 2005 |

DR. JEFFREY J. LEITZINGER
*Prior Testimony*
June 2002 – May 2006

Exhibit 1
11 of 13
Econ One Research, Inc.
Los Angeles, California

| | Proceeding | Court/Commission/Agency | Docket or File | Deposition/Trial/Hearing | Date |
|---|---|---|---|---|---|
| 22. | J.B.D.L. Corp. d/b/a Beckett Apothecary et al v. Wyeth-Ayerst Laboratories Inc., et al | United States District Court, Southern District of Ohio, Western Division | Civil Action No. C-1-01-704 | Deposition | May 2004 November 2004 |
| 23. | Dewana G. Turner, Bonita H. Hixson and Yolanda P. Monroe, on behalf of themselves and all others similarly situated v. Alaska Communications Systems Long Distance Inc. and Alaska Communications Systems Group Inc. | Superior Court for the State of Alaska, Third Judicial District at Anchorage | Case No. 3AN-01-7208 CI | Deposition | July 2004 |
| 24 | In Re Remeron Direct Purchaser Antitrust Litigation | U.S. District Court, District of New Jersey | Master Docket No. 03-CV-0085 | Deposition | July 2004 |
| 25. | Louisiana Wholesale Drug Co. Inc. on behalf of itself and all others similarly situated v. Schering-Plough Corporation, Upsher-Smith Laboratories, and American Home Products Corporation | U.S. District Court, District of New Jersey | MDL No. 1419 | Deposition | December 2004 |

Exhibit 1
12 of 13
Econ One Research, Inc.
Los Angeles, California

**DR. JEFFREY J. LEITZINGER**
*Prior Testimony*
**June 2002 – May 2006**

| | Proceeding | Court/Commission/Agency | Docket or File | Deposition/ Trial/Hearing | Date |
|---|---|---|---|---|---|
| 26. | Pixon, Inc. v. Placeware, Inc. | U.S. District Court, Northern District of California | Case No. C 03 2909 SI | Deposition Trial | December 2004 February 2005 |
| 27 | Fran-Am Partnership, L.L.C. vs. Sports Car Club of America, Inc. and S.C.C.A. Enterprises, Inc. | U.S. District Court, District of Colorado | Civil Action No 02-Z-2060 (OES) | Deposition | January 2005 |
| 28 | In Re Medical Waste Services Antitrust Litigation | U.S. District Court, District of Utah, Central Division | MDL No. 1546 | Deposition | April 2005 |
| 29 | Applied Medical Resources Corp. v. Ethicon, Inc., Ethicon Endo-Surgery, Inc., Johnson & Johnson Health Care Systems, Inc., and Novation, L.L.C. | U.S. District Court, Central District of California, Southern Division | Case NO SACV 03-1329 JVS | Deposition | June 2005 |
| 30. | Brady Enterprises, Inc., Charlotte J. Lopacki, d/b/a Budget Drug and Heritage Pharmacy, Inc., On behalf of themselves, and all others similarly situated, and the Pharmacy Freedom Fund and the National Community Pharmacists Association v. Medco Health Solutions, Inc. and Merck & Co., Inc. | U.S. District Court, Eastern District of Pennsylvania | Civil Action No 03-4730 | Deposition | July 2005 |

Exhibit 1
13 of 13
Econ One Research, Inc.
Los Angeles, California

DR. JEFFREY J. LEITZINGER
*Prior Testimony*
June 2002 – May 2006

| | Proceeding | Court/Commission/Agency | Docket or File | Deposition/ Trial/Hearing | Date |
|---|---|---|---|---|---|
| 31. | The Regents of the University of California, a California public corporation vs. Monsanto Company, a Delaware corporation | U.S. District Court, Northern District of California, San Francisco Division | Case No. C04-00634 PJH | Deposition | August 2005 |
| 32. | Dennis M. Devetter, ET AL. vs. Alex Brown Management Services, Inc. ET AL. | In the Circuit Court for Baltimore City | Case No. 24-C-037514 | Deposition | January 2005 |
| 33. | Sky Technologies, LLC vs. IBM Corporation and i2 Technologies Inc. | U.S. District Court, Eastern District of Texas, Marshall Division | Case No. 2 03 CV 54-DF | Deposition | January 2005 |
| 34. | In Re Nifedipine Antitrust Litigation | U.S. District Court, District of Columbia | MDL No. 151 | Deposition | May 2006 |

# EXHIBIT E

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MEIJER, INC., MEIJER DISTRIBUTION, INC., LOUISIANA WHOLESALE DRUG CO., INC., ROCHESTER DRUG CO-OPERATIVE, INC., VALLEY WHOLESALE DRUG COMPANY, INC., AMERICAN SALES COMPANY, INC., SAJ DISTRIBUTORS, INC., and STEPHEN L. LaFRANCE HOLDINGS, INC., on behalf of themselves and all others similarly situated,** | No. 05 Civ. 2195 (CKK)<br><br>**ORAL ARGUMENT REQUESTED** |
| **Plaintiffs,**<br>v. | |
| **WARNER CHILCOTT HOLDINGS COMPANY III, LTD., WARNER CHILCOTT CORPORATION, WARNER CHILCOTT (US) INC., WARNER CHILCOTT COMPANY, INC., GALEN (CHEMICALS), LTD., and BARR PHARMACEUTICALS, INC.,** | |
| **Defendants.** | |

# REDACTED
# PURSUANT TO PROTECTIVE ORDER

### DIRECT PURCHASER CLASS PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION

### COUNSEL LISTED ON SIGNATURE PAGE

**Dated: July 14, 2006**

would not change whether this action were brought by one plaintiff or one hundred: Defendants' agreement cannot be illegal as to some direct purchasers, but not others.

Similarly, just as in *Relafen, Cardizem, Buspirone* and *Lorazepam*, Plaintiffs have met their burden on class certification: proof of antitrust injury, or fact of impact, will be demonstrated here by common, class-wide evidence. Among other things, Plaintiffs have submitted an expert declaration by a noted economist, Jeffrey J. Leitzinger, Ph.D., who has extensive experience analyzing economic impact and damages in antitrust drug cases generally, and *specifically* in the delayed generic entry antitrust cases discussed above (among other similar pending actions), in which district courts have certified classes of direct purchasers of brand-name prescription drugs. *See Declaration of Jeffrey J. Leitzinger, Ph.D. ("Leitzinger Decl.")* (Exh. A in accompanying volume of exhibits) at 2-4 and Exh. 1. Dr. Leitzinger concludes, among other things, that the same type of common evidence that other courts deemed suitable and sufficient for class certification purposes in directly analogous cases is available here. *Leitzinger Decl.* at 9, 16-30. *See, e.g., Cardizem*, 200 F.R.D. at 308; *Buspirone*, 210 F.R.D. at 58; *Relafen*, 218 F.R.D. at 344.

As detailed below, in antitrust cases alleging injury in the form of overcharges, the core issues can be proven through evidence that is common and class-wide. As the Supreme Court has stated, "Predominance [of common issues] is a test readily met in certain cases alleging . . . violations of the antitrust laws." *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997).

# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MEIJER, INC., MEIJER DISTRIBUTION, INC., LOUISIANA WHOLESALE DRUG CO., INC., ROCHESTER DRUG CO-OPERATIVE, INC., VALLEY WHOLESALE DRUG COMPANY, INC., AMERICAN SALES COMPANY, INC., SAJ DISTRIBUTORS, INC., and STEPHEN L. LaFRANCE HOLDINGS, INC., <br><br> On behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> WARNER CHILCOTT HOLDINGS COMPANY III, LTD., WARNER CHILCOTT CORPORATION, WARNER CHILCOTT (US) INC., WARNER CHILCOTT COMPANY, INC., GALEN (CHEMICALS), LTD., and BARR PHARMACEUTICALS, INC., <br><br> Defendants. | No. 05 Civ. 2195 (CKK) |

DECLARATION OF JEFFREY J. LEITZINGER, PH.D.

Econ One Research, Inc.

July 14, 2006

5th Floor
601 W. 5th Street
Los Angeles, California 90071
(213) 624-9600
fax: (213) 624-6994

Suite 1170
1215 K Street
Sacramento, California 95814
(916) 449-2860
fax: (916) 449-2870

Suite 2828
Three Allen Center
333 Clay Street
Houston, Texas 77002
(713) 228-2700
fax: (713) 228-3296

Suite 230
106 E. 6th Street
Austin, Texas 78701
(512) 476-3711
(512) 476-9712

## I.    Introduction and Qualifications

I am an economist and President of Econ One Research, Inc., an economic research and consulting firm with offices in Los Angeles, Sacramento, Austin, and Houston. I have masters and doctoral degrees in economics from UCLA and a bachelor's degree in economics from Santa Clara University. While at UCLA, one of my areas of concentration was industrial organization, which involves the study of markets, competition, antitrust and other forms of regulation.

During the past 25 years of my professional career, industrial organization has remained the principal focus of much of my work. I have worked on numerous projects relating to antitrust economics, including analyzing issues involving market power, market definition, and the competitive effects of firm behavior. I also have frequently assessed damages resulting from anticompetitive conduct and have substantial experience in the calculation of damages in class action litigation. Additionally, I have significant experience with economic issues related to class certification in antitrust contexts.

I have testified as an expert economist in state and federal courts and before a number of regulatory commissions. A more detailed summary of my training, past experience and prior testimony is shown in Exhibit 1.

- 1 -

With respect to the pharmaceutical industry, I am familiar with the economic and academic literature on the subject of generic competition and impaired generic competition. I also have specific experience making economic assessments of the effects of AB-rated[1] generic competition in pharmaceutical markets. For instance, I have previously analyzed impact and damages issues, as well as issues relating to the allocation of aggregate damages to individual class members, in a number of antitrust cases that involve allegations very similar to this case – *i.e.*, class actions involving direct purchasers of brand-name drugs who were overcharged as a result of impaired generic competition.

For example, in *In re: Relafen Antitrust Litigation*, Master File No. 01-12239-WGY (D. Mass.), I submitted three reports in which I (i) evaluated market power under Section 2 of the Sherman Act, as well as relevant market issues, (ii) estimated aggregate overcharge damages to the direct purchaser class, and (iii) rebutted arguments made by the defense expert relating to class certification. The court granted class certification, and the Relafen direct purchaser class ultimately settled their claims for $175 million. For purposes of

---

[1] "AB-rated" is a term the United States Food and Drug Administration ("FDA") uses to classify generic drug products that have been found to be therapeutically equivalent to the branded counterpart. An AB-rated generic may be freely substituted for its branded counterpart at the pharmacy level without the prescribing physician's permission in most states. The FDA lists such substitutable drugs in its "Orange Book," the formal title of which is *Approved Drug Products With Therapeutic Equivalence Indications*. "Therapeutically equivalent" is a technical term for products that meet certain criteria including safety and efficacy, "pharmaceutical equivalence," "bioequivalence," labeling and manufacturing standards. The definitions of therapeutic equivalence, pharmaceutical equivalence, and bioequivalence are listed in Sections 1.2 and 1.7 of the FDA's "Orange Book". The "Orange Book" can be found at http://www.fda.gov/cder/orange/default.htm.

this settlement, I submitted a report setting forth the damages methodology I employed, an allocation methodology and the results based upon application of my proposed methodologies to the claimant data. The damages and allocation methodologies and results were approved by the court.

In the *Cardizem* case (*In re: Cardizem CD Antitrust Litigation*, MDL No. 1278 (E.D. Mich.)), I prepared an analysis of aggregate, class-wide damages incurred by a class of direct purchasers for purposes of mediation and settlement. The direct purchaser class (which was certified by the court) settled their claims for $110 million. I also prepared an analysis regarding the allocation of settlement proceeds among class members. The court approved this analysis.

I performed a similar role in the *Buspirone* case (*In re: Buspirone Patent & Antitrust Litigation*, MDL No. 1413 (S.D.N.Y.)). In connection with the $220 million settlement of the direct purchaser class claims in this case, I prepared a report analyzing aggregate damages to the direct purchaser class and proposed a damages allocation method. This report was submitted to the court in support of the motion to approve the class settlement and proposed allocation plan and was approved as fair and reasonable.

In *In re: Remeron Direct Purchaser Antitrust Litigation*, No. 03-CV-0085 (D.N.J.), I submitted a report in support of class certification. The class certification issues I addressed included (i) the likely impact of a delay in generic competition on a class of direct purchasers of the branded antidepressant

- 3 -

Remeron, (ii) the availability of economic methodologies and evidence common to all class members that would demonstrate impact in the form of overcharges, and (iii) whether overcharge damages could be calculated on a class-wide, aggregate basis using reliable methodologies. I also submitted an expert report addressing the issues of monopoly power, market definition, and aggregate overcharge damages, and a rebuttal report on those subjects. Finally, I submitted a proposed allocation plan to the court in support of settlement. In *Remeron*, the direct purchaser class claims were settled for $75 million and the court approved my damages and allocation methodologies as fair and reasonable. *See* Exhibit 1 for a more detailed list of my work in the pharmaceutical industry.

Econ One is being compensated for the time I spend on this matter at my normal and customary rate of $525 per hour. Econ One also is being compensated for time spent by my research staff on this project at their normal and customary hourly rates.

## II.     Factual Overview

I understand that the Complaint[2] in this matter was filed by Meijer, Inc. and Meijer Distribution, Inc., Louisiana Wholesale Drug Company, Inc.,

---

[2] The Complaint to which I refer is dated April 14, 2006, and is entitled "Amended Class Action Complaint." I shall refer to it hereinafter as the "Complaint."

- 4 -

# EXHIBIT G

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

KING DRUG COMPANY OF FLORENCE, INC.; and
VALLEY WHOLESALE DRUG COMPANY, INC.,
on behalf of themselves and all others similarly situated,

     Plaintiffs,

vs.

    Case No. 1:06-CV-163-HJW
    Judge Michael H. Watson

SANOFI-AVENTIS; BRISTOL-
MYERS SQUIBB COMPANY; and
APOTEX CORPORATION,

     Defendants.

_____/

### AFFIDAVIT OF TED SCHERR

I, Ted Scherr, being duly sworn, depose and say, under penalty of perjury, the following:

1.    I am _Pres/CEO_ (Title) of _Dakota Drug inc_ (the "Company"). I have the authority to execute this Affidavit on behalf of the Company.

2.    The Company, located in Minot, North Dakota, was founded in 1948. As an independent full service healthcare distributor, they provide service to pharmacies, retail drug stores, and hospitals in the Midwestern United States through the distribution of pharmaceuticals, over the counter health and beauty care products, and giftware.

3.    The Company is a direct purchaser of Plavix from Defendants Bristol-Myers Squib/Sanofi-Aventis and as such is a member of the putative class in the above captioned

1

litigation. In terms of dollar volume, Plavix is one of the top two pharmaceutical products purchased by the Company.

4.      The Company has been a member of the direct purchaser class in other pharmaceutical antitrust cases including *In re Buspirone Antitrust Litig.*, MDL Docket No. 1410, U.S.D.C., S.D.N.Y.; *In re Cardizem CD Antitrust Litig.*, MDL Docket No. 1278, U.S.D.C., E.D.Mich.; *In re Relafen Antitrust Litig.*, Master File No. 01-12239, U.S.D.C., D.Mass.; *In re Terazosin Hydrochloride Antitrust Litig.*, MDL Docket No. 1317, U.S.D.C., S.D. Fla.; and *In re Remeron Antitrust Litig.*, Civil Action No. 03-cv-323, U.S.D.C., D.N.J.

5.      The law firm of Garwin, Gerstein & Fisher, LLP ("Garwin Gerstein") was lead or co-lead counsel in each of the cases listed in Paragraph 4 above. Those cases resulted in extraordinary settlements with an aggregate value of $655 million. As lead or co-lead counsel in those cases, Garwin Gerstein always acted in the Class's best interest and kept my Company apprised of the status of the litigation. In all of my dealings with Garwin Gerstein, its attorneys have treated me with the utmost respect.

6.      I believe that Garwin Gerstein was the key force in effectuating the settlements of the actions listed in Paragraph 4 above. I am confident in Garwin Gerstein's ability to effectively lead in the prosecution of this litigation and trust them to act as a fiduciary for the class. I believe that Garwin Gerstein's participation in this action as lead counsel is in the Company's best interest.

2

7.      In consideration of the above and foregoing, The Company respectfully requests that the Court give due consideration to Garwin Gerstein's leadership in the management of this case.

I declare under penalty of perjury that the above and foregoing is true and correct to the best of my knowledge, information, and belief, this _22_ day of August, 2006.


_Ted Scherr_ (signature)

Ted Scherr


Sworn to and subscribed before me, Notary Public, on this _22_ day of August, 2006.

_Cindy Lohse_ (signature)

Notary Public

CINDY LOHSE
Notary Public
State of North Dakota
My Commission Expires Apr. 16, 2010

3

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

KING DRUG COMPANY OF FLORENCE, INC.; and
VALLEY WHOLESALE DRUG COMPANY, INC.,
on behalf of themselves and all others similarly situated,

     Plaintiffs,

vs.

SANOFI-AVENTIS; BRISTOL-
MYERS SQUIBB COMPANY; and
APOTEX CORPORATION,

     Defendants.

_____/

Case No. 1:06-CV-163-HJW
Judge Michael H. Watson

## AFFIDAVIT OF DICK MORAN

    I, Dick Moran, being duly sworn, depose and say, under penalty of perjury, the

following:

    1.    I am ___*V.P. /C.O.O.*___ (Title) of ___*Value Drug Co.*___ (the

"Company"). I have the authority to execute this Affidavit on behalf of the Company.


    2.    Value Drug Company, founded in 1934 and incorporated in 1936, is an

independent wholesale drug distribution company, primarily serving the central Pennsylvania

area.

    3.    The Company is a direct purchaser of Plavix from Defendants Bristol-Myers

Squib/Sanofi-Aventis and as such is a member of the putative class in the above captioned

litigation.  In terms of dollar volume, Plavix is one of the top two pharmaceutical products

1

purchased by the Company.

4.     The Company has been a member of the direct purchaser class in other pharmaceutical antitrust cases including *In re Buspirone Antitrust Litig.*, MDL Docket No. 1410, U.S.D.C., S.D.N.Y.; *In re Cardizem CD Antitrust Litig.*, MDL Docket No. 1278, U.S.D.C., E.D.Mich.; *In re Relafen Antitrust Litig.*, Master File No. 01-12239, U.S.D.C., D.Mass.; *In re Terazosin Hydrochloride Antitrust Litig.*, MDL Docket No. 1317, U.S.D.C., S.D. Fla.; and *In re Remeron Antitrust Litig.*, Civil Action No. 03-cv-323, U.S.D.C., D.N.J.

5.     The law firm of Garwin, Gerstein & Fisher, LLP ("Garwin Gerstein") was lead or co-lead counsel in each of the cases listed in Paragraph 4 above.  Those cases resulted in extraordinary settlements with an aggregate value of $655 million.  As lead or co-lead counsel in those cases, Garwin Gerstein always acted in the Class's best interest and kept my Company apprised of the status of the litigation.  In all of my dealings with Garwin Gerstein, its attorneys have treated me with the utmost respect.

6.     I believe that Garwin Gerstein was the key force in effectuating the settlements of the actions listed in Paragraph 4 above.  I am confident in Garwin Gerstein's ability to effectively lead in the prosecution of this litigation and trust them to act as a fiduciary for the class.  I believe that Garwin Gerstein's participation in this action as lead counsel is in the Company's best interest.

7.     In consideration of the above and foregoing, The Company respectfully requests

2

that the Court give due consideration to Garwin Gerstein's leadership in the management of this case.

I declare under penalty of perjury that the above and foregoing is true and correct to the best of my knowledge, information, and belief, this 18th day of August, 2006.

_____
Dick Moran

Sworn to and subscribed before me, Notary Public, on this 18th day of August, 2006.

_____
Notary Public

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Renee' E. Hollen, Notary Public
Logan Twp., Blair County
My Commission Expires Apr. 27, 2008
Member, Pennsylvania Association Of Notaries

3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

KING DRUG COMPANY OF FLORENCE, INC.; and
VALLEY WHOLESALE DRUG COMPANY, INC.,
on behalf of themselves and all others similarly situated,

      Plaintiffs,

vs.

SANOFI-AVENTIS; BRISTOL-
MYERS SQUIBB COMPANY; and
APOTEX CORPORATION,

      Defendants.

_____/

Case No. 1:06-CV-163-HJW
Judge Michael H. Watson

AFFIDAVIT OF ERIC SCHUSS

I, Eric Schuss, being duly sworn, depose and say, under penalty of perjury. the following:

1.    I am *Chairman of the Board* (Title) of *Bellco Drug Corp.* (the "Company"). I have the authority to execute this Affidavit on behalf of the Company.

2.    The Company is a full-line, full-service wholesale distributor of over 20,000 branded, generic, and biotech pharmaceuticals, vaccines, and health & beauty care products. The Company's national customer base includes independent and chain retail pharmacies, government agencies, and an array of institutional pharmacy markets. Through two distribution facilities located in N. Amityville, New York and Brea, California, the Company is positioned to provide service to customers throughout the United States.

1

3.    The Company is a direct purchaser of Plavix from Defendants Bristol-Myers Squib/Sanofi-Aventis and as such is a member of the putative class in the above captioned litigation. In terms of dollar volume, Plavix is one of the top pharmaceutical products purchased by the Company.

4.    The Company has been a member of the direct purchaser class in other pharmaceutical antitrust cases including *In re Buspirone Antitrust Litig.*, MDL Docket No. 1410, U.S.D.C., S.D.N.Y.; *In re Cardizem CD Antitrust Litig.*, MDL Docket No. 1278, U.S.D.C., E.D.Mich.; *In re Relafen Antitrust Litig.*, Master File No. 01-12239, U.S.D.C., D.Mass.; *In re Terazosin Hydrochloride Antitrust Litig.*, MDL Docket No. 1317, U.S.D.C., S.D. Fla.; and *In re Remeron Antitrust Litig.*, Civil Action No. 03-cv-323, U.S.D.C., D.N.J.

5.    The law firm of Garwin, Gerstein & Fisher, LLP ("Garwin Gerstein") was lead or co-lead counsel in each of the cases listed in Paragraph 4 above. Those cases resulted in extraordinary settlements with an aggregate value of $655 million. As lead or co-lead counsel in those cases, Garwin Gerstein always acted in the Class's best interest and kept my Company apprised of the status of the litigation. In all of my dealings with Garwin Gerstein, its attorneys have treated me with the utmost respect.

6.    I believe that Garwin Gerstein was the key force in effectuating the settlements of the actions listed in Paragraph 4 above. I am confident in Garwin Gerstein's ability to effectively lead in the prosecution of this litigation and trust them to act as a fiduciary for the class. I believe that Garwin Gerstein's participation in this action as lead counsel is in the

2

Company's best interest.

7.    In consideration of the above and foregoing, The Company respectfully requests that the Court give due consideration to Garwin Gerstein's leadership in the management of this case.

I declare under penalty of perjury that the above and foregoing is true and correct to the best of my knowledge, information, and belief, this 21 day of August, 2006.

_Eric Schuss_

Sworn to and subscribed before me, Notary Public, on this 21 day of August, 2006.

DEBRA FORGIONE
Notary Public, State of New York
No. 01FO5077110
Qualified in Suffolk County
Commission Expires 05/05/2007

_Notary Public_

3

Case 1:07-cv-00370-RWR     Document 5-9     Filed 03/12/2007     Page 11 of 13
Case 1:06-cv-00202-MHW     Document 28-3     Filed 08/23/2006     Page 26 of 32
AUG-23-2006 13:31 FROM:MCQUEARYBROS     18882001256     TO:3184871741     P.2/4

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

KING DRUG COMPANY OF FLORENCE, INC.; and
VALLEY WHOLESALE DRUG COMPANY, INC.,
on behalf of themselves and all others similarly situated,

        Plaintiffs,

vs.

SANOFI-AVENTIS; BRISTOL-
MYERS SQUIBB COMPANY; and
APOTEX CORPORATION,

        Defendants.

_____/

Case No. 1:06-CV-163-HJW
Judge Michael H. Watson

## AFFIDAVIT OF DAVID MCQUEARY

I, David McQueary, being duly sworn, depose and say, under penalty of perjury, the following:

1.    I am ~~DAVID S. McQueary~~ *Vice President* (title) of McQueary Bros. (the "Company"). I have the authority to execute this Affidavit on behalf of the Company.

2.    McQueary Bros. Wholesale Drug Company is an independent regional pharmaceutical wholesaler located in Springfield, Missouri. Since beginning operation in 1924, McQueary Bros. has expanded its service area to include seven states in the Midwest and South U.S.: Missouri, Arkansas, Illinois, Iowa, Kansas, Oklahoma, Nebraska.

3.    The Company is a direct purchaser of Plavix from Defendants Bristol-Myers

1

Case 1:07-cv-00370-RWR    Document 5-9    Filed 03/12/2007    Page 12 of 13

Case 1:06-cv-00202-MHW    Document 28-3    Filed 08/23/2006    Page 27 of 32
AUG-23-2006 13:31 FROM:MCQUEARYBROS    18882001266    TO:3184871741    P.4/4

Squib/Sanofi-Aventis and as such is a member of the putative class in the above captioned litigation. In terms of dollar volume, Plavix is one of the top two pharmaceutical products purchased by the Company.

4.    The Company has been a member of the direct purchaser class in other pharmaceutical antitrust cases including *In re Buspirone Antitrust Litig.*, MDL Docket No. 1410, U.S.D.C., S.D.N.Y.; *In re Cardizem CD Antitrust Litig.*, MDL Docket No. 1278, U.S.D.C., E.D.Mich.; *In re Relafen Antitrust Litig.*, Master File No. 01-12239, U.S.D.C., D.Mass.; *In re Terazosin Hydrochloride Antitrust Litig.*, MDL Docket No. 1317, U.S.D.C., S.D. Fla.; and *In re Remeron Antitrust Litig.*, Civil Action No. 03-cv-323, U.S.D.C., D.N.J.

5.    The law firm of Garwin, Gerstein & Fisher, LLP ("Garwin Gerstein") was lead or co-lead counsel in each of the cases listed in Paragraph 4 above. Those cases resulted in extraordinary settlements with an aggregate value of $655 million. As lead or co-lead counsel in those cases, Garwin Gerstein always acted in the Class's best interest and kept my Company apprised of the status of the litigation. In all of my dealings with Garwin Gerstein, its attorneys have treated me with the utmost respect.

6.    I believe that Garwin Gerstein was the key force in effectuating the settlements of the actions listed in Paragraph 4 above. I am confident in Garwin Gerstein's ability to effectively lead in the prosecution of this litigation and trust them to act as a fiduciary for the class. I believe that Garwin Gerstein's participation in this action as lead counsel is in the Company's best interest.

2

7.      In consideration of the above and foregoing, The Company respectfully requests that the Court give due consideration to Garwin Gerstein's leadership in the management of this case.

I declare under penalty of perjury that the above and foregoing is true and correct to the best of my knowledge, information, and belief, this __23__ day of August, 2006.

David McQueary

TERESA R. WHITE
My Commission Expires
January 25, 2008
Lawrence County

Sworn to and subscribed before me, Notary Public, on this __23ʳᵈ__ day of August, 2006.

Teresa R. White
Notary Public
Teresa R. White

# EXHIBIT H

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE HARVARD DRUG GROUP, LLC    :
                                :
                Plaintiff,      :
                                :
        v.                      :
                                :
ASTRAZENECA PHARMACEUTICALS     :
L.P.; ASTRAZENECA L.P.; ZENECA, INC.,;   :
and ZENECA HOLDINGS, INC.,      :
                                :
                Defendants.     :
                                :
_____ :

## AFFIDAVIT OF SAMIR SHAH

1.    I am Samir Shah, Vice President of the Harvard Drug Group, LLC ("Harvard Drug").

2.    I can and do hereby certify that Harvard Drug is a Michigan Corporation that is privately owned and has no parent companies, subsidiaries or affiliates which have any outstanding stock or securities in the hands of the public.

3.    Harvard Drug has filed its separate claim by a class action seeking treble damages arising from what is considered to be unlawful restraint of trade and monopolization and attempted monopolization of the market for the prescription drugs, Prilosec, Nexium and their AB- rated generic equivalents.

4.    Harvard Drug was founded in 1967 and is based in Michigan.  Harvard Drug has approximately $400 million in annual revenues.  Harvard Drug is the one of the few combination Generic Drug/Consumer Products Distributor, Drug Wholesaler and Primary Manufacturer in the nation. For example, Harvard Drug is the second largest generics-focused pharmaceutical distributor in the United States.  Harvard Drug supplies generic and branded pharmaceuticals to over 6,000 retail customers, which include independent, regional and national pharmacies.

5.    Second, as a wholesaler. Harvard Drug ships to thousands of customers via next day service, six days a week.  We have grown from an assembly of regional pharmaceutical distributors to one of the top 8 largest wholesale distributors in the United States.

6.    Harvard Drug is a direct purchaser of Nexium from defendants in significant dollar volumes.  Based on the size of our company and our Nexium business, we would expect our stake in this case to be significant and to be among the larger class members.

7.    Given its stake in the case, Harvard Drug intends to monitor the case and work with lead counsel, including with respect to issues of appropriate recoveries, settlements and attorneys' fees.

8.    Harvard Drug supports and recommends the law firms of Cohen, Milstein, Hausfeld & Toll, P.L.L.C. and Boies, Schiller & Flexner  LLP as co-lead counsel for the class in this case based on their experience, qualifications and past success.

I swear under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

_____    2/22/07

Samir Shah, Vice President
The Harvard Drug Group, LLC